LORRAINE PALOW (KITCHIN)
*vs.*
HAROLD KITCHIN

Kennebec.    Opinion, August 1, 1953

*Cratty & Cratty*, for plaintiff.

*Jerome G. Daviau*, for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J.

TIRRELL, J.   On Exceptions by respondent.

This is a petition addressed to a Justice of the Superior Court for execution to issue against the respondent in the amount of $90.00 alleged to be overdue the complainant under a support order incident to a divorce decree.

The facts are as follows:

The Superior Court for Kennebec County at its October Term 1950 and on October 3, 1950 granted Harold Kitchin, here respondent, a divorce from Lorraine Kitchin, now Lorraine Palow, here complainant; granted custody of two minor children to Lorraine Kitchin aforesaid, and Harold Kitchin aforesaid was ordered to pay Lorraine Kitchin the sum of $15.00 per week for the support of the minor children.   This decree was in effect on the date of the petition and at the time of hearing before the Justice of the Superior Court.

The support order was complied with by respondent until he entered military service on January 31, 1951, at which time, as part of the administrative procedure incidental to his induction, he was informed of his right to authorize an "allotment of pay" for the benefit of his dependents (two minor children) and did so authorize an allotment which, under then current United States statutes and regulations of the Department of the Army was known as a Class "Q" allotment and which amounted to $107.50 per month.

This amount was composed of $40.00 deducted from the soldier's pay and $67.50 from the Government as an allowance for "quarters" for the dependents.

The soldier's pay was $78.00 per month for the first four months of service, then $83.20 until he should have completed two years. This is known as "base" pay and is applicable to the soldier in grade of "private."

Complainant received the amount of $107.50 monthly from "the time Harold went into service" until about June 1, 1952.

About June 1, 1952 (as of May 19, 1952 effective May 1, 1952) the government's portion of this Class "Q" allotment was increased to $77.10 monthly, making a total allotment of $117.50 monthly.

> See Act popularly known as "Career Compensation Act of 1949" effective October 1, 1949 and under Title 37 United States Code Annotated, Chapter 4, Secs. 231-322, which superseded act popularly known as "Servicemen's Dependents Allowance Act of 1942" providing for wartime allowances to servicemen's dependents, repealed October 12, 1949, effective October 1, 1949, and which appeared under Title 37 U.S.C.A., Chapter 3, Secs. 201-221.

Complainant received the amount of $117.10 monthly from about June 1, 1952 to February 7, 1953 when she received the allotment check for January 1953.

Respondent was promoted to the grade of Corporal in November 1951. This would bring an increase in his base pay.

Respondent was released from military service on January 24, 1953. Complainant has received no money from respondent since the February 7, 1953 above recited.

Complainant contends that respondent is in default of his obligation under the subsisting decree from February 1, 1953 to the date of her petition (March 17, 1953), a period of six weeks at $15.00 per week, a total of $90.00, and asks execution therefor.

The basic dispute between the parties is over the application of $972.80. This is the sum by which the total amount received as an allotment ($2,877.80) exceeded the total amount of payments accrued under the support decree ($1,905.00) to the date of the petition.

Respondent contends that the total amount received as an allotment should be credited against the amounts due and to become due under the decree, and that on this basis he has satisfied his obligation under the decree many weeks in advance.

On the other hand, the complainant contends that, although she should and did allow all sums received as an allotment, both those deducted from respondent's pay and those allowed by the government, against the payments due under the decree during the time when the respondent was in service and as they accrued, the surplus received by her was received for the benefit of the children, and did not constitute prepayment of amounts to accrue under the decree after the respondent's service ended.

The justice hearing the petition sustained this contention of the complainant. He ordered execution to issue against the respondent as in an action of tort for the sum of $90.00. This was the amount of six payments which had accrued under the decree subsequent to the termination of the respondent's service and the termination of the period for which allotment was paid by the government. In addition thereto, the justice ordered the respondent to pay to the attorney for Lorraine Palow, the complainant, the sum of $35.00 as counsel fees for the prosecution of her petition, same to be paid not later than April 20, 1953, and that in default of payment that execution therefor as in an action of tort issue against the said respondent.

The respondent seasonably filed exceptions to these rulings as erroneous in law.

When the custody of a minor child is granted to the mother on divorce from the father, and the father is ordered to contribute to the mother for the support of the child, his common law obligation to support the child ceases and the obligation under the decree is substituted therefor. Until modified by the court, as it may be, the amount which the father is ordered to pay in such decree measures his duty to support the child. *Hall* v. *Green,* 87 Me. 122; *Harvey* v. *Lane,* 66 Me. 536; *Gilley* v. *Gilley,* 79 Me. 292; *Brow* v. *Brightman,* 136 Mass. 187; *Mahaney* v. *Crocker,* 149 Me. 76 (not yet reported).

The provisions of the Federal Statutes relative to allotments to the dependents of persons in the armed services (37 U. S. C. A. Chap. 4, Secs. 231-252; 37 U. S. C. A. Chap. 2, Secs. 201-221) are not a substitute for the common law liability of the father to support his dependents, nor do they terminate his liability so to do when the same is fixed and measured by a decree of a court of competent jurisdiction. As said in *Keen* v. *Goodwin,* 182 Pac. (2nd) (Wash.) 697, 699:

> "The most compelling reason for holding that the Federal statute did not supersede the court's decree, is that no law passed by state or Federal lawmaking bodies, can set aside, nullify, or modify a court's judgment. Appellant had a vested right in the decree allowing her two hundred dollars support money, and no power could take it from her, except the reserved right of the court to modify, as provided by state law in force at the time the decree was entered."

Although the Federal act relative to allotments was not a substitute for and did not in and of itself discharge the liability of the respondent under the decree of the Superior Court, it does not follow that the payments thereof when actually made, they being in sufficient amount therefor, did not discharge the liability which had already accrued under

the decree. In *Kipping* v. *Kipping,* 209 S. W. (2nd) (Tenn.) 27 at 29, it was held that the total amount of allotment, including both the amount deducted from the soldier's pay and that allowed by the government should, so far as necessary to discharge the same, be credited against the accruing liability under a court decree for support of the dependent.

In the case of *Hinton* v. *Hinton,* 199 S. W. (2nd) 591, it was held that the government allotments were not intended to increase the pay of enlisted men but to make provision for the support of their dependents while the men were in the armed services. In that case there was a court order requiring the enlisted man to pay $20.00 per month to his divorced wife for the support of his child. The government allotment was $42.00 per month, of which $22.00 was deducted from the pay which otherwise should have been paid to the soldier himself. As here the respondent claimed he had by means of the excess of the allotment above the court order overpaid the complainant. The court in that case said:

> "The allotment payments totaling $42 per month were not made under the divorce decree, but they were made nevertheless, and appellant should have credit therefor. They were made during the entire period of appellant's service in the army, and were in an amount sufficient to discharge his obligation to pay up to the time of his discharge from the army, so that he owed nothing when he was discharged from the army. But the obligation to pay $20 per month for the support of his child did not cease upon his discharge from the army. That obligation continued and now exists, and he should be charged with that amount since the date of his discharge. No allotment payments were made after November, 1945, and appellant should be charged with his child's support as provided in the decree, from that date."

In the instant case the Justice of the Superior Court was correct in ruling that the excess of the amount received

from allotments, over and above the payments due under the decree accruing for the same period as that for which the allotments were made, did not constitute a prepayment of amounts to accrue under the decree after the termination of the period for which the allotments were paid. The respondent's first exception avails him nothing.

The respondent in oral argument abandoned his exception to the allowance of counsel fees.

However, the ruling of the justice after hearing on the petition ordering payment of counsel fees to the attorney for the complainant is provided for by the statutes. R. S. (1944), Chap. 153, Sec. 63, as amended by P. L., 1947, Chap. 321. The exception to this ruling was without merit.

*Exceptions overruled.*