No. 47,524

SHIRLEY MAY ANDLER, n/k/a SHIRLEY MAY SLIMMER, *Appellee*, v. HAROLD EUGENE ANDLER, *Appellant*.

(538 P. 2d 649)

Opinion filed July 17, 1975.

*Dale L. Somers*, of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and was on the brief for the appellant.

No appearance or brief was filed on behalf of the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: The question here presented, for the first time in Kansas, is whether unqualified Social Security disability payments made for the benefit of minor children because of their

father's total disability constitute a satisfaction of child support payments required by a divorce decree.

The uncontroverted facts surrounding this controversy are not complicated and are summarized.

Harold Eugene Andler (defendant-appellant) and Shirley May Andler (plaintiff-appellee) were married on August 12, 1956. Three sons were born to this marriage before tragedy struck Harold. On June 22, 1969, an automobile accident resulted in a spinal cord injury which totally disabled Harold, paralyzing him from the chest down.

Thereafter on October 9, 1969, Shirley filed an action for divorce. Harold executed a voluntary entry of appearance and on December 11, 1969, the parties were granted a divorce. The divorce decree granted custody of the three minor children to Shirley. The decree further ordered Harold to pay to Shirley, through the clerk of the district court of Shawnee County, $160 per month for the children's support and maintenance, beginning on January 1, 1970.

Because of his disability Harold is currently unemployed. With the exception of one short period of time he has not been able to draw any salary since the accident. His only source of income has been a $249 per month Social Security disability benefit which he began receiving in January 1970, after his divorce was final. Harold has remarried. He and his present wife have purchased an 80 acre farm which is their homestead. The purchase price was $48,000 with a down payment of $12,000. Of this down payment $3,000 came from Harold and his present wife's savings and the remaining $9,000 came from an informal loan from Harold's mother, to be repaid as he is capable. The farm requires monthly payments of $330 which are made from Harold's $249 per month disability payment, and from his present wife's salary of $140 per week. They also receive $400 per year from pasture rental, and $80 per month rent from a garlow, when rented.

The Social Security Administration provides benefits for minor children whose parent(s) is (are) disabled. The minor children are considered beneficiaries of the benefits earned and paid for by their parents under the Social Security Act. The money given under this program is an unqualified grant of money to be used as the minor's guardian determines. (42 U. S. C. A. 402 [d] [1].) In January 1970, one month after the divorce, Shirley commenced receiving for the benefit of the three minor children $221.10 per month disability benefits from the Social Security Administration pursuant

to this legislation. These payments were not received, and apparently were not even contemplated, at the time of the divorce. However the $221.10 per month disability benefits which Shirley has consistently received since January 1970 exceeds the $160 per month child support which Harold was ordered to pay in the divorce decree.

Harold, who had consented to the $160 per month child support payments, made four payments in that amount for the months of January, February, March and April of 1970. Thereafter his savings were exhausted and he terminated these payments because he had no money with which to make them. However, as indicated, the $221.10 disability benefits to Shirley for the benefit of the minor children have continued since January 1970.

On August 13, 1973, after accepting $221.10 per month Social Security disability benefits for over three years, Shirley filed a motion in district court for a citation in contempt against Harold for failure to pay child support as decreed and to determine the child support in arrearage.

After hearing the matter the trial court found that no payments were made by Harold since April 1970, as required by the divorce decree and that each of the unpaid installments when due became a judgment against Harold. It did rule that Harold not be found in contempt of court for failure to make the child support payments as ordered on December 11, 1969, and it further ordered that child support payments henceforth be terminated "for the reason that the plaintiff is receiving Social Security disability payments for the benefit of the minor children of the parties in an amount in excess of that ordered by this court."

In a memorandum announcing its decision the trial court said:

"The Court is most reluctant to hold that defendant in the instant case is still obligated for the past due and unpaid child support installments. Such a ruling appears to be harsh and bordering on the unconscionable. However, I have reluctantly concluded that this Court possesses no power to change or modify the original order for past due installments for the support of the minor children of the parties."

In support of the trial court's decision, the appellee contends the mere fact that the children received Social Security payments does not constitute a satisfaction of the child support judgments which were not personally paid by the appellant. The appellee further contends that the children were entitled to the Social Security pay-

ments by an act of Congress and that their entitlement existed without regard to any support judgment entered by the district court.

The appellant contends the Social Security payments should constitute a satisfaction of the child support judgments, and that it would be inequitable for the court to determine, as a matter of law, that a judgment presently exists for all amounts of child support which were due under the decree and not personally paid by the appellant.

The trial court advanced four reasons for its decision in favor of Shirley, the appellee herein. One reason was that the payments were not made through the clerk of the district court as directed. Generally speaking, a divorced father is required to make child support payments as directed by the district court in the divorce decree, and he should not be permitted to vary the terms of the decree or the manner of payment to suit his convenience, or otherwise disregard the court's order. (*Ediger v. Ediger*, 206 Kan. 447, 451, 479 P. 2d 823.) Special considerations of an equitable nature, however, may justify a court in crediting child support payments made directly to the wife, to the children or to others on the children's behalf on due and unpaid child support, although made at variance with the technical requirement that they be made through the clerk of the district court, when that can be done without injustice to the divorced mother. (*Ediger v. Ediger*, supra; *Dorsey v. Dorsey*, 28 Colo. App. 63, 470 P. 2d 581 [1970]; *Martin v. Martin*, 59 Wash. 2d 468, 368 P. 2d 170 [1962]; and *Gould v. Awapara*, 365 S. W. 2d 671 [Tex. Civ. App. 1963]. See also, 27B C. J. S., Divorce, § 321 [1], p. 636; and Annot., 47 A. L. R. 3d 1031 [1973].) But payments made in excess of amounts required to be made for child support are considered gratuitous. (*Ediger v. Ediger*, supra.)

In *Ediger* payments were to be made through the clerk of the district court. In weighing the equities the court held that failure to strictly observe the requirement of payment through the clerk of the district court did not prevent the divorced father from receiving credit. The payments made to the daughter in college were held to constitute substantial compliance with the support order.

The trial court's conclusion that a judgment for the appellee "appears to be harsh and bordering on the unconscionable" leaves no doubt that the equities here lie in favor of the appellant. The appellee received $221.10 per month for a period of 41 months

from May 1970, to September 1973, totaling $9,065.10, against and in satisfaction of child support payments of $160 per month for the same period, totaling $6,560, plus accrued interest. (But see, *Cohen v. Cohen*, 246 So. 2d 581 [Fla. Ct. App. 1971], appeal dismissed 255 So. 2d 524 [Fla. 1971].)

A second reason advanced by the trial court for its decision was that the Social Security disability benefits were not contemplated at the time of the divorce, and consequently the parties did not at that time intend that the disability payments would constitute satisfaction of the child support payments. Whether the disability benefit payments constituted satisfaction of appellant's child support obligation is a question of law to be resolved by the courts, and is not dependent upon the intention of the parties. (*State, ex rel., v. Doolin & Shaw*, 209 Kan. 244, 497 P. 2d 138.)

A third reason advanced by the district court for its decision was that the Social Security Administration would have paid the $221.10 per month disability benefits to appellee for the benefit of the minor children without regard to any divorce decree provision ordering the appellant to make child support payments. It is axiomatic that even a divorced father has a continuing obligation to support his minor children. (*In re Estate of Sweeney*, 210 Kan. 216, 500 P. 2d 56.) *Thompson v. Thompson*, 205 Kan. 630, 470 P. 2d 787, recognizes that gratuitous contributions from relatives, friends, charities, governmental agencies or a stepfather will not reduce or diminish the father's obligation to furnish child support. It is apparent the trial court considered the Social Security benefits as gratuitous payments not satisfying the appellant's child support obligations.

Social Security benefits paid to the appellee for the benefit of the parties' minor children as the result of the appellant's disability may not, however, be regarded as gratuitous. On the contrary, the payments received by the appellee are for the children as beneficiaries of an insurance policy. The premiums for such policy were paid by the appellant for the children's benefit. The purpose of Social Security is the same as that of an insurance policy with a private carrier, wherein a father insures against his possible future disability and loss of gainful employment by providing for the fulfillment of his moral and legal obligations to his children. This tragedy having occurred, the insurer has paid out

benefits to the beneficiaries under its contract of insurance with the appellant, and the purpose has been accomplished.

The United States Congress has seen fit to place the federal government in the role of insurer in order to afford members of the work force the protection and security of insurance against future disability. The fundamental nature of the Social Security system is a form of insurance in every sense of that word. Benefits paid out by a governmental insurer, under a policy of insurance for which the insured has paid premiums, are no more gratuitous than benefits paid out by a private insurance company. The United States Supreme Court had occasion to examine the nature of the Social Security system in *Flemming v. Nestor*, 363 U. S. 603, 4 L. Ed. 2d 1435, 80 S. Ct. 1367 (1960). After noting that the Social Security system is "social insurance," the court continued:

". . . [P]ersons gainfully employed, and those who employ them are taxed to permit the payment of benefits to the retired and disabled, and their dependents. Plainly the expectation is that many members of the present productive work force will in turn become beneficiaries rather than supporters of the program. . . .

". . . The 'right' to Social Security benefits is in one sense 'earned,' for the entire scheme rests on the legislative judgment that those who in their productive years were functioning members of the economy may justly call upon that economy, in their later years, for protection. . . ." (pp. 609, 610.)

The federal district court in *Roston v. Folsom*, 158 F. Supp. 112, 121 (E. D. N. Y. 1957) recognized that Social Security is in the nature of insurance and that the terms "insured," "insurance" and "beneficiary" are used throughout the act. In fact, 42 U. S. C. A. § 402 (*d*) is entitled "Child's insurance benefits," and uses that term throughout.

The insurance concept here in issue was considered by the federal district court in *Schmiedigen v. Celebrezze*, 245 F. Supp. 825 (D. D. C. 1965) where the court said:

". . . [T]he payments prescribed by them [the Social Security Act] are not gratuities or matters of grace; they are not public assistance; they are not welfare payments. On the contrary, the law created a contributory insurance system, under which what in effect constitute premiums are shared by employees and employers. Consequently, in spirit at least, if not strictly and technically, the employee, who throughout his working life has contributed part of the premiums in the form of deductions from his wages or salary, should be deemed to have a vested right to the payments prescribed by the statutory scheme, which in effect comprises the terms of his insurance policy. He has earned the benefits; he is not receiving a gift. . . ." (p. 827.)

Because of the unconditional nature of Social Security disability and old age benefits, other courts have held they constitute a satisfaction of a child support order when paid to the divorced mother for the benefit of the minor children. (*Horton v. Horton,* 219 Ga. 177, 132 S. E. 2d 200 [1963]; and *Cash v. Cash,* 234 Ark. 603, 353 S. W. 2d 348 [1962]; but see *Fowler v. Fowler,* 156 Conn. 569, 244 A. 2d 375 [1968].)

We hold where a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under the divorce decree. The father is entitled to credit, however, only up to the extent of his obligation for monthly payments of child support, but not exceeding it. Here the excess of $61.10 paid each month must be regarded under the divorce decree as a gratuity to the children. While the $61.10 is not a gratuity in the sense that it represents the children's vested right under the insurance concept of the Social Security system, it nevertheless is a gratuity under the divorce decree to the extent it exceeds the amount ordered in the divorce decree.

Military benefits to dependents of divorced servicemen provide a persuasive analogy. It has repeatedly been held monthly benefits received by the divorced wife pursuant to an allotment for the benefit of dependents authorized by her former husband who is in the military service discharges his accruing liability under a divorce decree. *Hinton v. Hinton,* 211 Ark. 159, 199 S. W. 2d 591 (1947); *Kipping v. Kipping,* 186 Tenn. 247, 209 S. W. 2d 27 (1948); *Brooks v. Brooks,* 204 Ga. 412, 49 S. E. 2d 881 (1948); *Loomis v. Loomis,* 221 Ark. 743, 255 S. W. 2d 672 (1953); *Palow v. Kitchin,* 149 Me. 113, 99 A. 2d 305 (1953); and *Hopwood v. Hopwood,* 169 Neb. 760, 100 N. W. 2d 833 (1960). The government's military benefits are not considered a gratuity to the dependent children, but are part of an inducement for enlistment paid for by continued military service, *Kipping v. Kipping,* supra.

The foregoing was recognized by this court in *Koons v. Koons,* 190 Kan. 65, 372 P. 2d 62. There allotment benefits were not made under the divorce decree, but were made under federal statutes and army regulations, and the defendant, a divorced father serving in the military, was properly given credit for those allotments. If credit may properly be given for army allotments, the trial court's

refusal, as a matter of law, to give credit for Social Security benefits herein cannot be reconciled.

A fourth reason advanced by the trial court for its decision was that the appellant did not assert the payment of $221.10 per month disability benefit to the appellee as a basis for terminating his $160 per month child support payments, and that the appellant made four child support payments through the clerk of the district court after the disability benefits commenced. It is apparent the appellant was unaware of his legal remedy, if any, when he made the first four child support payments. His failure to immediately assert such remedy does not waive his right to seek relief in a case such as this. The appellant asserted a good faith effort, and clean hands under equitable principles, until he had exhausted his financial resources. Under the circumstances here presented the four payments of child support in the amount of $160 each must be regarded as gratuities for the children. (*Ediger v. Ediger,* supra.)

In *Loomis v. Loomis,* supra, one of the military allotment cases, the divorced father made nine monthly child support payments without realizing the government allotment was satisfying his child support obligations. Yet those nine child support payments did not prevent the government's allotments from constituting a satisfaction of child support payments.

Here the four child support payments made by the father do not prevent the Social Security disability benefits paid to the mother from constituting a satisfaction of child support obligations.

Since the payments made by the Social Security Administration by reason of the appellant's disability for the benefit of the minor children were in excess of the amount specified in the divorce decree for child support, they constitute satisfaction of child support obligations under the divorce decree. Accordingly, there were no past due installments for child support payable when the trial court heard the appellee's motion.

The judgment of the lower court insofar as it finds the appellant not guilty of contempt is affirmed, but in all other respects the judgment is reversed.

FROMME, J., not participating.