James Henry HINCKLEY,
Appellant (Petitioner),

v.

Brenda Lee HINCKLEY, Appellee
(Respondent).

No. 90–46.

Supreme Court of Wyoming.

June 5, 1991.

Sue Davidson, Cheyenne, for appellant.

Robert L. Nelson, Cheyenne, for appellee.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and LANGDON, District Judge.

THOMAS, Justice.

The question in this case is whether an award of Social Security benefits made directly to children because of the Social Security disability of their father must be credited against unpaid child support payments and future child support obligations. The trial court ruled that the lump sum Social Security benefit paid to the children under a federal statute should not be credited against unpaid child support and, further, that no credit against future child support obligations would be made. The court also held that no material change in circumstances had been demonstrated that would justify an adjustment in the amount of child support awarded in the divorce decree. Ancillary questions are presented concerning discovery on the part of the husband with respect to the needs of the children and the income of the ex-wife and the propriety of an award of attorney fees. We agree with the rulings by the trial court except for the award of attorney fees. The award of attorney fees was not supported by evidence establishing the reasonableness of the fee charged as required by our rule. The order and judgment entered by the trial court are affirmed in all respects except for the award of attorney fees, which must be reversed.

The father, as appellant, sets forth the issues on appeal to be:

"1. Whether unqualified monthly Social Security Disability payments awarded, post divorce, for the benefit of their father's disability, as a matter of law, constitute satisfaction of child support payments required by the divorce decree.

"2. Whether unqualified monthly Social Security Disability payments awarded, post divorce, for the benefit of the parties' minor children because of their father's total disability constitutes a material change of circumstance so that monthly disability payments constitute satisfaction of child support payments required by the divorce decree.

"3. Whether a lump sum payment of $14,103.44 in back Social Security disability payments for the children for the two year period preceding the award should be credited to back child support arrearages especially when child support payments for the same two year period were current (except for a $100.00 shortage).

"4. Whether the Court failed to allow appellant to properly discover evidence regarding the children's needs and ex-wife's income situation.

"5. Whether an award for attorney's fees was improper since appellee failed to present evidence establishing the reasonableness thereof."

The mother, as appellee, states the issues in substantially the same way as the father.

The parties in this case were married on August 11, 1973. In November of 1974, the father suffered serious back injuries while on active duty with the United States Air Force. Despite several surgical procedures following his injury, the Veterans Administration declared the father to be 100% disabled in 1977. The father then retired from the United States Air Force and began to receive Veterans Administration benefits. The father and the mother were divorced by a decree entered January 19, 1983. The divorce decree incorporated a separation agreement signed by the parties, which required the father to pay child support through the clerk of the court in the amount of $150 per month for each of his two children. The child support payments were to begin on January 1, 1983. The separation agreement also provided that if either party should violate its terms,

the party in violation agreed to pay the reasonable attorney fees incurred by the other party in enforcing his or her rights.

At the time the separation agreement was entered into, the father's only income was his disability pension from the Veterans Administration of $1,377 per month. The father previously had been receiving Social Security benefits, but he had waived those in order to go to school. Both prior to, and after, the divorce, the father also received from the Veterans Administration a small monthly benefit for his children, which he forwarded to them.

In November of 1987, a Social Security hearing examiner found the father to be 100% disabled. Social Security then began providing a monthly benefit to the children of the marriage. This benefit was in the amount of $584 per month by May 5 of 1989. A retroactive lump sum award of approximately $14,000 was sent to the mother, as custodian for the children.[1] On May 19, 1988, the father filed a petition for the appointment of a conservator to manage the $14,000 on behalf of the children. In his petition, he nominated a corporate conservator, but he also volunteered to serve in that capacity. At the time the petition was filed, the father served on the mother a set of interrogatories and a request for production of documents, which requested information about her income and finances and expenditures for the children. The mother objected to the interrogatories and the request for production on the grounds that they were irrelevant, immaterial, and beyond the scope of the issues. Subsequently, the trial court entered an order compelling a response to only one of the interrogatories and requiring that only two of the requests for production of documents be honored.

A little less than a month after the petition for appointment of conservator was filed, and at the same time the mother responded to that petition, she filed, in the divorce action, a "Motion to Find Defen-

---

1. The exact amount that the mother received for the children is not established by the record. The husband indicates a figure of approximately $14,000. The husband's brief states the amount as a precise $14,103.44, but his citations to the record do not support this figure. The decision letter by the trial judge states that the amount received was $14,040.

dant in Contempt, Complaint for Judgment of Back Child Support, Medical and Other Bills, Motion for Attorneys Fees." In that pleading, the mother alleged that the father had failed to pay child support pursuant to the order of the court in the divorce case; had failed to maintain medical care for the children; and had failed to pay certain medical debts as required by the decree of divorce. In her pleading, the mother also requested attorney fees incurred by her in bringing the proceeding. The father then counterclaimed, requesting, among other things, that the Social Security benefits paid on his account to the children be set off against any arrearages in child support that might be due from him and also be credited against his future child support obligation.

On July 14, 1988, the father filed a motion to consolidate the two proceedings. A number of intervening pleadings then were filed before November 2, 1988, when the trial court entered an order consolidating the conservatorship proceeding and the proceedings pending in the divorce case for purposes of trial. On July 29, 1988, they were consolidated for purposes of a hearing on the motion to compel discovery. A trial of all of the issues in the case was held on May 5, 1989 and, after the submission of written arguments by the parties, the court, on January 2, 1990, entered its "Judgment and Order Finding Defendant/Petitioner in Contempt and Denying Certain Motions." That judgment and order denied the request of the husband for a conservatorship; found that the husband had not demonstrated a substantial or material change in circumstances; denied his request for modification of the amount of child support; found the husband to be in arrears for child support payments in the amount of $5,500 as of May 1, 1989; awarded the wife reimbursement for medical expenses and marital debts she had paid; and awarded her attorney fees against the husband in the amount of $2,799.60. The trial court also found that the husband was in contempt for failure to comply with the original divorce decree. This appeal was taken from that judgment and order.

The first two issues asserted by the father concern the effect of Social Security disability payments upon the father's future obligation for child support. The father contends that the Social Security payments either should be considered as satisfying his obligation for future child support because they replace the money due from him under the decree or that the mother's receipt of the money constitutes a substantial and material change in circumstances that should justify the reduction of his support obligation. The trial court did not accept either of these arguments, and it refused to either suspend or modify the father's obligation for future child support.

■ Turning first to the father's argument that the Social Security benefit payments made to the wife should serve to satisfy his obligation for child support, our review of pertinent Wyoming authority reveals no prior case in which this point was raised. The father directs our attention to decisions from other jurisdictions that have permitted an obligor for child support to satisfy that obligation through payment of benefits by the government. The father particularly relies upon *Andler v. Andler*, 217 Kan. 538, 538 P.2d 649 (1975).

In *Andler*, the obligor, who became disabled prior to the entry of the divorce decree, was ordered to pay $160 per month for child support. One month after the divorce decree was entered, the ex-wife started to receive a Social Security disability benefit of $221.10 per month for the children because of the father's disability. The Kansas Supreme Court held that the disability benefit had satisfied the father's child support obligation each month from the time the ex-wife began to receive those payments. The court responded to the contention that the benefit payments constituted a "gratuity" which should not be applied to the father's obligation by saying:

"The United States Congress has seen fit to place the federal government in the role of insurer in order to afford members of the work force the protection and security of insurance against future disability. The fundamental nature of the

Social Security system is a form of insurance in every sense of that word. Benefits paid out by a governmental insurer, under a policy of insurance for which the insured has paid premiums, are no more gratuitous than benefits paid out by a private insurance company." *Andler,* 538 P.2d at 653.

The rationale employed in *Andler* has been invoked by a number of courts to justify credit for Social Security benefits paid to or on behalf of an obligor's children. *See, e.g., Binns v. Maddox,* 57 Ala. App. 230, 327 So.2d 726 (1976); *Potts v. Potts,* 240 N.W.2d 680 (Iowa 1976); *Horton v. Horton,* 219 Ga. 177, 132 S.E.2d 200 (1963). *See generally* Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Payments Made for Benefit of Child,* 77 A.L.R.3d 1315 § 5(a) (1977). These cases appear to be premised, at least in part, on equitable concerns that arise when a non-custodial parent sustains a substantial reduction in his earning capacity because of some disability. *Todd v. Norman,* 840 F.2d 608 (8th Cir.1988); *Gibson v. Gibson,* 110 Mich.App. 666, 313 N.W.2d 179 (1981).

We acknowledge that, in an instance in which the obligor has become disabled after the entry of an order for child support and is unable to work, the receipt of Social Security benefits by the children of the obligor may render the previous support order inequitable. The question is whether we should allow the obligor to unilaterally apply Social Security benefits that are received by his children to fulfill his obligation. Our precedents in Wyoming authority are antithetical to the course pursued by the father. We adopt the rule that the receipt of payments from Social Security by the children of one obligated to pay child support may constitute a change of circumstances giving rise to justification for a petition for modification of the decree.

In *Redman v. Redman,* 521 P.2d 584 (Wyo.1974), we espoused the principle that a party who seeks to reduce an indivisible order of child support because of the fact that some of the children had been eman-cipated should petition the court for modification rather than unilaterally reducing his payments. "We think it a high-risk adventure for a party to the action to take it upon himself to interpret a decree of court, particularly in view of the continuing accessibility of the court." *Redman,* 521 P.2d at 587–88. The same rationale pertains in this instance. If we were to permit the obligor to make a unilateral modification of the support requirements in the divorce decree, that would divest the trial court of its discretion to determine whether its previous order of support should be modified in accordance with the particular circumstances of the case. *See* § 20–2–113(a), W.S.1977 (June 1987 Repl.); *Burnham v. Burnham,* 743 S.W.2d 568 (Mo.App.1987). The Washington court has aptly explained the principle in this way:

"The disability and resulting entitlement to Social Security are changes in condition of the parties to be considered in a modification proceedings but do not give rise to a modification or deduction without affirmative action by the court for they are not necessarily determinative. The father may be independently wealthy; or he may, in the interim, have inherited property. Benefits from private or public retirement systems may have accrued and become payable to him. In short, many developments affecting the economic condition of the parties may have occurred which would not permit or warrant a modification of the decree to the extent of deducting the Social Security benefits for dependent children from the child support ordered in a decree of divorce." *Chase v. Chase,* 74 Wash.2d 253, 444 P.2d 145, 149 (1968).

We hold that the receipt of Social Security benefits by the children is one factor to be considered by the district court in making its determination as to whether a significant, material change of circumstances has occurred that is sufficient to justify modification of a non-custodial parent's obligation for support. *See Burnham; Gerlich v. Gerlich,* 379 N.W.2d 689 (Minn.App.1986); *In re Marriage of Robinson,* 651 P.2d 454 (Colo.App.1982); *Chase. See generally* Annot. 77 A.L.R.3d 1315. In

order to receive credit against the child support obligation for the Social Security payments, the party obligated to make those payments has an affirmative duty to seek modification of the support order. *See Burnham; Newman v. Newman,* 451 N.W.2d 843 (Iowa 1990).

 In anticipation of our adoption of this rule, the father argues that the trial court should have modified his obligation for child support based on the change of circumstances that occurred when his children began to receive the Social Security benefits. The trial court denied the father's request for modification. Our rule is that the determination of whether to modify an obligation for child support lies within the sound discretion of the trial court, and that court's determination will not be disturbed except for grave abuse of discretion or for the violation of some legal principle. *See Scaling v. Scaling,* 805 P.2d 866 (Wyo.1991); *Esponda v. Esponda,* 796 P.2d 799 (Wyo.1990); *Manners v. Manners,* 706 P.2d 671 (Wyo.1985); *Booker v. Booker,* 626 P.2d 561 (Wyo.1981). The burden is assigned to the party who seeks to have the support obligation modified to establish that a substantial or material change in circumstances has occurred since the entry of the decree. *Nuspl v. Nuspl,* 717 P.2d 341 (Wyo.1986); *Manners.*

 In a case such as this, the fact that children become entitled to receive Social Security benefits is not the exclusive factor for the trial court to consider in ruling upon the petition for modification. A determination of the amounts of child support that are appropriate in an instance in which modification is sought due to a change in circumstances requires a consideration of the needs of the children, the ability of the father to contribute to those needs and his responsibility to do so, and the ability of the mother to contribute to those needs and her responsibility to do so. *Nuspl. See Manners.* In this case, the trial court, on the evidence that was presented, reasonably could have found that there was no diminution in the father's ability to make his $300 per month child support payment. The father agreed to make those payments

at a time when he already was disabled and was receiving as his only income a disability benefit from the Veterans Administration of $1,377 per month. That benefit has not decreased over the years; instead it has increased. Not only that, but the father's income has increased since the time of the divorce because he also now receives benefits from Social Security. At the time of this proceeding, the father had an income of $2,300 per month, upon which no federal taxes could be collected. It is true that the children now receive more than the support awarded at the time of the divorce decree, but the father's income has been enhanced as well. There has been no change in the father's physical condition; he was 100% disabled before the divorce, and he still is 100% disabled. Under these circumstances, we cannot say that the trial court committed a grave abuse of its discretion or violated some legal principle in holding that there was no substantial, material change of circumstances that would justify a modification of the father's obligation for child support.

 The third issue that the father presents relates to the lump sum payment of Social Security benefits that his children received after the determination was made of the father's entitlement to benefits. The lump sum of some $14,000 was received from the Social Security Administration as a retroactive payment for some two years of unpaid benefits for the children. The father urges this court to credit this payment as a set-off against past-due child support and against medical and health insurance premium reimbursements that the court found he owed.

The same analysis that we applied for crediting those payments against future obligations for child support is applicable with respect to the claim for a credit against arrearages in child support. That analysis leads to the conclusion that retrospective modification of the decree would be required in order to receive credit for such a payment against past-due child support. In some states that follow a similar rule, credit has been refused in these circumstances for precisely that reason. *See,*

*e.g., Moritz v. Moritz,* 368 N.W.2d 337 (Minn.App.1985); *Fowler v. Fowler,* 156 Conn. 569, 244 A.2d 375 (1968).[2] Our statute incorporates a rule of no retrospective modification of child support. Section 20–2–113(a), W.S.1977 (June 1987 Repl.), provides, in pertinent part:

" * * * On the petition of either of the parents, the court may revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires. Provisions respecting maintenance [i.e., child support] *may be modified only as to payments or installments accruing subsequent to the petition for modification except on agreement of the parties."* (Emphasis added.)

*See also, Parry v. Parry,* 766 P.2d 1168 (Wyo.1989). The record contains no evidence of any agreement to modify the father's obligation for past child support. Because application of the lump sum his children received to that prior support obligation would amount to a retrospective modification of his support obligation, it is forbidden by statute. Accordingly, we affirm the decision of the trial court that held the father to be in arrears with respect to his obligation to pay child support in the amount of $5,500 as of May 1, 1989.

The same result pertains with respect to a claim of set-off against the medical expenses due from the father. The divorce decree required the father to carry medical insurance on his minor children. The father failed to do so, and the trial court charged him with reimbursing to the wife the premiums for health and medical insurance that she had paid. No evidence can be found that the father sought a modification of his obligation to pay health and medical insurance premiums for the children and, even if he had, the statute also

would foreclose the retrospective modification of that obligation in this way.

■ We turn now to the father's claim that the failure of the trial court to compel answers to certain of his interrogatories and to compel production of certain documents constituted error. The interrogatories and request for production related to the wife's income, employment, and assets, to the children's assets, and to the wife's expenditures on behalf of the children. The father now claims that answers to these interrogatories were essential to the preparation of his case for modification of his support obligation. We agree with the father that, when one petitions for modification of child support, normally discovery should be allowed with respect to the assets of the other party and information relating to the needs of the children. Failure to permit such discovery has been held to be reversible error. *See Cubin v. Cubin,* 685 P.2d 680 (Wyo.1984). We do not recede from our decisions in *Nuspl; Manners;* or *Cubin.*

In our judgment, the facts in this case are sufficiently distinguishable from those in *Cubin* that we hold there was no reversible error in this instance. We note first that the interrogatories and request for production were filed in the case in which the conservatorship was sought. In fact, they were filed with the petition on May 19, 1988. The objection of the wife to those interrogatories and request for production, filed on June 13, 1988, was on the ground that they were irrelevant, immaterial, and beyond the scope of the issues in the conservatorship action. The father responded with a motion to compel answers, again in the conservatorship action, on June 21, 1988. On July 14, 1988, he filed another motion seeking to consolidate the divorce and conservatorship actions, and they were consolidated for purposes of a hearing on his motion to compel on July 29, 1988. On

---

**2.** Slightly different formulations of this rule may be found in *Newman v. Newman,* 451 N.W.2d 843, 845 (Iowa 1990) (father not entitled to restitution of Social Security benefit for time period in which he made child support payments); *Gerlich v. Gerlich,* 379 N.W.2d 689, 691 (Minn.App.1986) (party seeking forgiveness of arrearages due to government benefits received by his children must show that his failure to pay was not willful); *Chase v. Chase,* 74 Wash.2d 253, 444 P.2d 145, 149–50 (1968) (trial court had discretion to deny credit against arrearages due.)

August 9, 1988, the court entered the order that is the subject of this issue in the appeal, requiring the wife to answer the following interrogatory:

"11. Please provide an accounting as to monies received constituting underpayment of Social Security benefit payments received by you as the same relates to [the minor children] as may be evidenced by bank statement."

The order also required production of:

"4. Any and all documents reflecting trusts or any other instruments in which you or the minors, Christopher or Jessica, may have a real or equitable interest."

In addition, the order required the wife to furnish:

"7. An itemized accounting as to monies received by you constituting underpayment of social security benefit payments as the same relates to Christopher and Jessica as may be evidenced by bank statement and other physical documents."

While the discovery was sought and the motion to compel discovery was presented in the conservatorship action, the Order on Motion to Compel Production was captioned in the divorce action. This probably reflects the consolidation of the divorce and conservatorship proceedings for purposes of the hearing on the motion to compel. However, the other questions posed and matters sought to be produced, relating to the income of the wife and the income of the children, were not relevant in either the conservatorship proceeding or the husband's counterclaim in the divorce action. The only basis for a change in circumstances that the father claimed in the course of the divorce proceedings was the entitlement of the children to the Social Security benefits. Since the change of circumstances was circumscribed in this way, the trial court was justified in denying the discovery that was sought in this instance.

■ Generally, the question of whether answers to interrogatories are to be required is within the broad discretion of the trial court. *Inskeep v. Inskeep*, 752 P.2d 434 (Wyo.1988); *Mauch v. Stanley Struc-*

*tures, Inc.*, 641 P.2d 1247 (Wyo.1982). Parties are entitled to discovery only with respect to those matters that are relevant to the subject matter involved in the pending action. Rule 26(b)(1), W.R.C.P. In this instance, the trial court reasonably could have determined that the questions and the requests for production that related to the assets of the wife and the children's needs were not relevant to the conservatorship action in which they were requested. Furthermore, the court reasonably could have concluded that those questions and request for production did not lead to relevant evidence in the divorce action in which the sole claim for relief was premised upon the availability of the Social Security benefits. Accordingly, we affirm the refusal of the trial court to compel answers to the other questions that were objected to and to compel the production of the other documents to which objection was made.

■ The final issue presented by the father relates to the propriety of the award of attorney fees by the trial court. His argument is that this award cannot be sustained because of the lack of evidence establishing that the fees were reasonable. As we noted above, the separation agreement of the parties provided that, if either party violated any of its terms, the party committing the violation agreed to pay the reasonable attorney fees for the other party incurred in enforcing his or her rights under the agreement. At trial, the mother took the stand and the following testimony was elicited with respect to her attorney fees in this matter:

"Q. Have you had to incur attorney fees in bringing this action and defending the motions that Mr. Hinckley brought against you?

"A. Yes, I have.

"Q. I'm going to hand you what I've marked as Petitioner's Exhibit 20 and Plaintiff's Exhibit—this time I guess, I don't know. I'm going to change this to Respondent's Exhibit 20. Can you tell the Court who's been representing you during the entire course of this litigation?

"A. Mr. Robert Nelson.

"Q. Can you tell the Court on the basis upon which I have been representing you, the hourly charge?

"A. It's a hundred dollars an hour for out of courtroom and a hundred twenty-five dollars in courtroom.

"Q. Have you had occasion to review Respondent's Exhibit 20 that I've just handed to you?

"A. Yes, I have.

"Q. Tell the Court what it is?

"A. The total statement of the fees that I have spent on this case.

"Q. Have you been involved in this case from the beginning?

"A. Yes.

"Q. Do you know whether or not the work that is represented on this bill was actually performed?

"A. Yes.

"Q. How do you know that?

"A. Because I've signed the checks.

"Q. Right. I'm talking about the work, not the checks. I know it's been paid. I want to know if you think I did the work?

"A. Yes, I do."

There was no other testimony made regarding the amount or reasonableness of the attorney fees to be awarded.

Wyoming has adopted the federal "lodestar" test for the determination of the reasonableness of attorney fees. *UNC Teton Exploration Drilling, Inc. v. Peyton,* 774 P.2d 584 (Wyo.1989). *See Stanbury v. Larsen,* 803 P.2d 349 (Wyo. 1990). The lodestar test requires that two factors be considered: (1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward. *UNC Teton,* 774 P.2d at 595. The party who is seeking an award of fees has the burden of providing proof of the reasonableness of his fee. *See Miles v. CEC Homes, Inc.,* 753 P.2d 1021 (Wyo.1988); *Jones Land & Livestock v. Federal Land Bank,* 733 P.2d 258 (Wyo.1987). In order to meet that burden of proof, the claimant must present not only an itemized billing reflecting the time and the rate, but there must be evidence demonstrating that the fee was reasonable. *UNC Teton.* In this case, there was no testimony or other evidence presented with respect to the reasonableness of the attorney fees that were charged. We must reverse the award of attorney fees as an abuse of discretion by the trial court in light of the applicable rule of law.

The trial court's judgment and order is affirmed except for that portion of the judgment and order awarding attorney fees against the father. The award of attorney fees is reversed.

CARDINE, Justice, concurring in part and dissenting in part.

I concur in the above opinion insofar as the trial court held that accrued child support was due and owing and refused to modify retroactively. Beyond this, I dissent and would reverse and remand for further proceedings as outlined below.

The court in its opinion states:

"We adopt the rule that the receipt of payments from Social Security by the children of one obligated to pay child support may constitute a change of circumstances giving rise to justification for a petition for modification of the decree." Maj. op. at 911.

I agree with the rule adopted by the court. Having adopted this rule and having recognized the facts of this case as a basis for modification, the court approves the denial of discovery because it is said the motion for discovery was in the conservatorship case rather than the petition for modification case. The petition to modify and the application for conservatorship were consolidated. It seems that judicial economy and simple fairness would mandate that appellant have a right to discover all of the facts and circumstances that might bear upon his petition for modification and have a decision on that petition on the merits. Accordingly, I would affirm the judgment to the extent indicated, reverse the order denying discovery, and remand for further proceedings.