(280 P.3d 234)
No. 105,922

In the Matter of the Marriage of MOLLY S. TABER, *Appellee*, and JAMES L. TABER, *Appellant*.

Opinion filed June 29, 2012.

*Mark A. Sherman*, of Sherman & Dean, of Emporia, for appellant.

*Melissa Johnson* and *Randy M. Barker*, of Kansas Department of Social and Rehabilitation Services, of Topeka, appellee.

Before STANDRIDGE, P.J., MARQUARDT and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: James L. Taber was in arrears on his child support payments when he received a favorable ruling on his request for Social Security disability insurance (SSDI) benefits. Because SSDI benefits were retroactive, both Taber and his minor child, G.T., received lump-sum payments to cover the back benefits. G.T. was already receiving monthly Supplemental Security income (SSI) due to his own medical condition. G.T.'s SSDI lump-sum award was reduced by the amount of SSI benefits he received

during the same time frame. Taber filed a motion asking the district court to apply G.T.'s total lump-sum award to Taber's past due child support. The district court denied the motion. We reverse and remand with directions to calculate a credit to Taber's child support arrearage consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

James and Molly Taber were divorced in 1996. Taber was ordered to pay $300 per month for child support. Throughout the years, Taber paid his child support obligation sporadically at best. As of May 31, 2010, he was $10,974.75 in arrears.

In September 2007, Taber became disabled and ultimately was deemed eligible to receive disability benefits on May 14, 2010. However, due to a required 5-month waiting period, the Social Security Administration (SSA) determined his "entitlement" began in March 2008. Taber received a lump-sum SSDI payment for back benefits for the period of March 2008 to May 2010. G.T. also received a lump-sum SSDI payment for the period of March 2008 to May 2010. Because G.T. was already receiving SSI due to his own health problems, pursuant to federal law his lump-sum SSDI award of $17,154 was reduced by his personal SSI payments for the same time period ($13,747), such that G.T. only received a net award of $3,406.

Taber filed a motion asking that the district court apply G.T.'s total lump-sum award of $17,154 to Taber's child support arrearage that accumulated between September 2007 and May 2010. The district court denied the motion. Taber timely appeals.

The sole issue on appeal is whether Taber receives any credit toward his child support arrearage as a result of the lump-sum SSDI payment to his minor child, G.T. Because the material facts are not disputed and only the district court's legal conclusion is challenged, our review is unlimited. See *In re Marriage of Galvin,* 32 Kan. App. 2d 410, 413, 83 P.3d 805 (2004).

## CREDITING SSDI PAYMENTS TO CHILD SUPPORT ARREARAGE

Our court, along with the majority of other courts in the country which have considered this issue, has recently held that lump-sum

SSDI benefits for back benefits received by Mother on behalf of her minor child because of Father's disability may be credited toward Father's child support arrearage that accumulated during the months covered by the lump-sum payments. See *In re Marriage of Hohmann*, 47 Kan. App. 2d 117, 274 P.3d 27 (2012), *pet. for rev.* filed April 16, 2012 (pending).

However, the Kansas Department of Social and Rehabilitation Services (SRS) contends that our decision in *Hohmann* and the majority view of other courts are wrong for three distinct reasons. We disagree and stand by the reasoning of *Hohmann*. We will, however, address each claim made by SRS.

*The child's need is current and must be met monthly.*

SRS argues that parents are obligated to support their child on a timely basis as ordered by the court. If the courts allow lump-sum SSDI payments for back benefits to result in credits toward arrearages, even if only for the months covered by the lump-sum payments, it encourages obligors to delay any payments until their SSDI claims are decided, leaving the nonobligor parents to shoulder the entire financial burden of childrearing. This argument fails for several reasons.

First, the custodial nonobligor parent always has the ability to call upon the court's contempt powers to enforce child support payment orders. In fact, both Molly and SRS, as the assignee of child support rights in this case, took advantage of the contempt process on several occasions, resulting in payments, income withholding orders, threats of incarceration, and finally Taber's application for public assistance and disability benefits. Therefore, any failure to pay child support is at the obligor parent's own risk and subjects him or her to the court's broad powers to punish for contempt.

Second, there is no dispute that Taber receives credit for current monthly SSDI payments toward his current monthly child support obligation. This is clear from *Andler v. Andler*, 217 Kan. 538, 544, 538 P.2d 649 (1975). So in this case, Taber's monthly child support obligation is erased because G.T. receives more in SSDI payments ($647 per month) than Taber is required to pay in child support

($300 per month), and the monthly excess inures to the benefit of G.T. See 217 Kan. at 542-44. Further, the timing of the receipt of a lump-sum payment for previously earned SSDI benefits is entirely due to the inherent delay in navigating the federal SSA process. Had a timely decision been made by SSA, Taber would have received credit in those months that are now covered by the lump-sum award. There is no allegation presented by the parties here that the delay in receiving benefits was due to any actions on the part of Taber. If we hold that Taber should not receive credit, we penalize Taber for the SSA's delay.

Finally, it is clear that even though a nonobligor parent or others may be supporting the child, the remaining parent's obligation is not reduced. *Thompson v. Thompson*, 205 Kan. 630, 633, 470 P.2d 787 (1970). But the sole reason a parent applies for SSDI benefits is because he or she is unable to work and provide personal or family support. When a disability befalls one parent, the burden of support, at least temporarily, unfortunately falls upon the other parent. This same burden exists whether the parents are married or divorced. SSDI payments are not considered gratuitous but are instead insurance benefits paid on the condition of disability, a condition that was met in this case. See *Andler*, 217 Kan. at 542.

*Federal regulations prohibit the nonobligor parent from applying lump-sum payments to anything other than current maintenance.*

The SSDI benefits payable to G.T. are payable through Molly as the "representative payee" under federal regulations. SRS argues that federal regulations, specifically 20 C.F.R. § 404.2040 (2011), prohibit Molly from reimbursing herself from the lump-sum SSDI payment for child expenses she incurred and paid while Taber was in arrears. She would clearly be allowed such discretion, she argues, if Taber paid his arrearage or paid the child support due in a timely manner. Instead, as a representative payee, federal law unduly restricts how she can spend the money.

However, the regulation cited does not support this position, nor is SRS able to cite to any legal authority in support of its position. The regulation upon which SRS relies simply states that it "will consider that payments we certify to a representative payee have

been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance." 20 C.F.R. § 404.2040. It does not address lump-sum payments of back benefits. SRS directs us to the SSA website and a brochure entitled A Guide for Representative Payees (2009), http://www.ssa.gov/pubs/10076.html. Although this brochure has no legal effect and would certainly not be adequate authority upon which to grant or deny Taber credit for the lump-sum SSDI payment, it states, in pertinent part:

"How to handle a large payment of past benefits
"Sometimes benefits take awhile to be approved. When this happens, back benefits may be paid all at once, in a large payment. First, you must spend the money on the beneficiary's current needs such as rent and a security deposit, food or furnishings. After these expenses are paid, you may spend the money to improve the beneficiary's daily living conditions or for better medical care. It is important that you spend the money wisely. You should keep in mind that the money must be used in the beneficiary's best interests. If there is money still left over, it must be saved . . . ."

We find nothing in this language that would prohibit Molly from reimbursing herself for actual childrearing expenses incurred and paid during the months for which the lump-sum benefits were received, as long as she could document the expenditures to the SSA's satisfaction.

The brochure then goes on to state that the money can be used for a variety of things including medical and dental expenses, wheelchairs, insurance premiums, houses, cars, furniture, home improvements, movies, concerts, and magazine subscriptions. It concludes this topic with the following: "If you are not sure whether it is okay to use the money for a specific item (for example, paying a bill the beneficiary owed before you became payee), contact your local Social Security office before you spend the money."

This language leaves open the possibility that paying a bill incurred before the money was received by the representative payee may be appropriate, but further discussion with the SSA is necessary. So, although SRS's argument is at first blush compelling, SRS presents no legal support for its position. Failure to support a point with pertinent authority or show why it is sound despite a

lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Berriozabal*, 291 Kan. 568, 594, 243 P.3d 352 (2010).

*When there is no arrearage, crediting a lump-sum payment would result in a requirement that the nonobligor parent reimburse the obligor parent for the timely child support paid.*

Finally, SRS argues that if a child support obligor has timely paid his or her child support and subsequently the child receives a lump-sum payment covering months already paid by the obligor, the nonobligor parent would have to repay the obligor for the "overpayment." This issue was also raised in *Hohmann*, and although we declined to address it, we did note, as we do here, that the majority of courts take the view that no reimbursement is required and deem the excess to be a voluntary overpayment that inures solely to the benefit of the child. See, *e.g., Child Support Enforcement Agency v. Doe*, 92 Hawaii 276, 285-86, 990 P.2d 1158 (Hawaii App. 1999); *Brown v. Brown*, 849 N.E.2d 610, 616 (Ind. 2006); *Newman v. Newman*, 451 N.W.2d 843, 844 (Iowa 1990); *Holmberg v. Holmberg*, 578 N.W.2d 817, 827 (Minn. App. 1998), *aff'd* 588 N.W.2d 720 (Minn. 1999); *Keith v. Purvis*, 982 So. 2d 1033, 1038-39 (Miss. App. 2008); *Steel v. Hartwick*, 209 W. Va. 706, 708-09, 551 S.E.2d 42 (2001). Our Supreme Court also addressed this issue in *Andler*. Andler made four child support payments after his SSDI payments started. So for 4 months, Mother received both the child support payment and the SSDI payment. The Supreme Court found that those four child support payments "must be regarded as gratuities for the children." 217 Kan. at 545. We believe this reasoning to be sound and we can find no basis to depart from it.

Therefore, because G.T.'s lump-sum SSDI payment covered the time frame from March 2008 to May 2010, Taber should be given a credit towards his child support arrearages for those months in an amount equal to the amount of G.T.'s SSDI payment in each specific month. For any month in which the SSDI payment exceeds the amount Taber owes for that month, the excess inures to the benefit of G.T.

THE EFFECT OF THE SSI PAYMENTS MADE TO G.T.

SRS argues that if this court decides Taber is entitled to credit toward his child support arrearage, he should only be entitled to a credit of $3,406—the net amount that G.T. received after the SSA withheld the SSI payments G.T. received during the same time period. To fully address this issue, we must first examine the difference between SSI and SSDI benefits.

Pursuant to the Social Security Act, the federal government provides benefits to disabled persons under two distinct programs administered by the SSA. Subchapter II of the Act, through the SSDI program, provides for the payment of insurance benefits to persons who have previously worked and contributed to the program by paying taxes on earned income through the Federal Insurance Contributions Act (FICA). 42 U.S.C. §§ 401-433 (2006); *State ex rel. Secretary of SRS v. White*, 42 Kan. App. 2d 756, 758, 216 P.3d 727 (2009); *Horwitz v. Horwitz*, 897 So. 2d 337, 342 (Ala. Civ. App. 2004). When insured persons suffer from a physical or mental disability and are no longer able to work, they are entitled to benefits from the SSA insurance program in the form of SSDI payments to themselves and their minor children. 20 C.F.R. § 404.330 (2011). The amount of the benefit is directly related to the amount the insured has paid into the program. 42 U.S.C. § 415 (2006).

In contrast to the quasi-insurance nature of the SSDI program, SSI is a welfare program covered under 42 U.S.C. §§ 1381-83d (2006). It is funded by general tax revenues, not Social Security taxes. Eligibility for benefits is entirely unrelated to past earnings. It is available to all individuals whose income is below specified levels. 42 U.S.C. § 1381a (2006); *White*, 42 Kan. App. 2d at 758; *Martin v. Martin*, 70 Mass. App. 547, 550, 874 N.E.2d 1137 (2007).

In *In re Marriage of Emerson*, 18 Kan. App. 2d 277, Syl. ¶ 1, 850 P.2d 942 (1993), our court held that SSI benefits being paid to a minor child may not be claimed as credit towards the payment of court-ordered child support. The court reasoned that SSI benefits are designed to supplement the income of the disabled person and are not related to the disability of any other members of the family. The resources available to the child are taken into consid-

eration when the SSI benefits are determined. The court reasoned that SSI benefits are more in the nature of a gratuity from a governmental agency, unlike SSDI which is an earned insurance proceed. 18 Kan. App. 2d at 280-81 (citing *Andler*, 217 Kan. at 544). The court cited *Thompson*, 205 Kan. at 633, for the proposition that gratuitous contributions from governmental agencies are not to be used to reduce or diminish a father's obligation to furnish child support. *Emerson*, 18 Kan. App. 2d at 280. This appears to be the majority view. See *Martin*, 70 Mass. App. at 551 n.6 (enumerating other states that have adopted this view).

But this case is distinguishable from *Emerson* and presents an issue of first impression in Kansas. In *Emerson*, SSDI was not involved in the child support equation at all. The child support obligor was simply requesting a credit for the child's SSI payments. In this case, however, because SSI is a gratuitous, income-based program, federal law requires that the income of the recipient be evaluated regularly and an increase in income or benefits from other sources may offset, reduce, or eliminate the SSI payment. See *In the Matter of Lister & Lister*, 162 N.H. 48, 51-52, 27 A.3d 673 (2011). In the case of an SSI recipient who receives a lump-sum SSDI payment for back benefits, SSA looks at whether the SSI benefits would have been reduced if the SSDI benefits had been paid when regularly due. 42 U.S.C. § 1320a-6 (2006) (also known as the "windfall" offset provision); 70A Am. Jur. 2d, Social Security and Medicare § 643, p. 701. Here, G.T.'s SSDI lump-sum benefit was offset by what he had been paid in SSI benefits that would not have been paid had the SSDI benefit been paid in a timely manner. In essence, the government reimbursed itself for the gratuitous payments out of the SSDI lump-sum award. Would giving Taber credit for the entire SSDI payment, in effect, diminish his child support obligation based on a gratuitous payment from a governmental agency, as prohibited by *Emerson*? We do not believe it would. The fact remains that he is only receiving credit for SSDI back benefits, which we have already outlined is proper.

The result in this case would have been no different if Taber had simply paid his back child support. Molly, G.T.'s representative payee, would have been required to report the increase in income

from the child support payment, and SSA could have sought reimbursement for SSI paid during the same time frame and, if appropriate, eliminated future SSI payments. 20 C.F.R. Subpart G (2011); 20 C.F.R. § 416.708 (2011). There would have been no "windfall" to G.T. Likewise, if the SSA had paid Taber's SSDI benefits in a timely manner G.T. would not have been eligible for SSI benefits, or at least not as much in SSI benefits. Basically, in this case, the SSI benefits allowed G.T. to receive some current assistance at a time when his income was minimal due to his father's failure to pay child support. But when his father was able to pay, he had to first reimburse SSI for these "advances." If there had been no payment of arrearage, either through direct payments or SSDI reimbursement, according to *Emerson*, Taber would not receive any credit because neither he nor his earned insurance benefit was responsible for the payment. But once the arrearage is paid, the fact that SSI must first be reimbursed does not detract from the fact that father has paid the arrearage. To deny him credit would be to deny him credit for both the SSI payment, which he reimbursed, and his SSDI payment. This is unlike the situation discussed above where an obligor parent has both paid child support and received a lump-sum SSDI payment, because the obligor parent is at least getting full credit toward child support. To adopt the reasoning of SRS would be to deny Taber full credit. Accordingly, we find that Taber is entitled to credit for the SSDI back benefits assigned to G.T. to the extent they are contemporaneous with his support obligation.

Our review of the record leads us to the conclusion that from G.T.'s total lump-sum award of $17,154, Taber is entitled to a credit toward his child support arrearage for the months of March 2008 through May 2010 in the amount of $7,600. This represents the amount he owed for those 27 months ($8,100) minus the amount he paid during those months ($500). The balance, which would include the $3,406 net award to G.T., is a voluntary overpayment that inures to the benefit of G.T. and cannot be applied to any pre-March 2008 arrearage.

We reverse the district court ruling denying any credit toward Taber's child support arrearage that was specifically attributed to

the months between March 2008 and May 2010 and remand with directions for the district court to credit Taber's arrearage consistent with this opinion.

Reversed and remanded with directions.