(308 P.3d 1270)
No. 109,121

In the Matter of the Marriage of JERI D. STEPHENSON, *Appellee*, and GREGORY J. PAPINEAU, *Appellant*.

Opinion filed September 13, 2013.

*John W. Fresh*, of Larry R. Mears, Chartered, of Atchison, for appellant.

*J. David Farris*, of J. David Farris Law Offices, of Atchison, for appellee.

Before MALONE, C.J., ATCHESON, J. and LARSON, S.J.

MALONE, C.J.: Gregory J. Papineau appeals the district court's order denying his motion to modify child support. Papineau contends that he is entitled to reimbursement from Jeri D. Stephenson, his former wife, for child support payments he made to her on behalf of their minor children during months for which Stephenson, as representative payee for the minor children, ultimately received a retroactive lump-sum payment of Papineau's Social Security disability benefits. For the reasons set forth herein, we affirm the district court's order.

The facts are undisputed but also somewhat sketchy. Papineau and Stephenson were married in 1997. They had two children during the marriage, born in 2002 and 2004. When they divorced in 2006, Stephenson was granted primary residential custody of the

minor children. Both parties were employed full time, and child support responsibilities were allocated based on their earnings for full-time employment as well as the cost of health insurance, day-care, and related expenses. Papineau was ordered to pay child support to Stephenson in the amount of $782 per month.

In 2010, Papineau became permanently and totally disabled and unable to work. At the time he became disabled, he began receiving disability payments from a long-term disability insurance policy issued by Standard Insurance Company (Standard). The record does not reflect the amount of benefits paid by Standard. Papineau made no attempt to modify his child support obligation when he became disabled and unable to work in 2010. Instead, from 2010 until August 2012, Papineau continued to pay child support to Stephenson in the amount of $782 per month.

Papineau also filed for Social Security disability benefits, although the record does not reflect when Papineau initially filed his claim. Effective March 21, 2012, Papineau was awarded Social Security disability benefits. As part of Papineau's benefits, the minor children were awarded monthly benefits of $802 and a retroactive lump-sum payment of approximately $5,600. The record does not reflect how these benefits were calculated. Stephenson was designated by the Social Security Administration as the representative payee for the minor children and receives the payments on the children's behalf. According to the briefs and counsels' statements at oral argument, Stephenson has set aside the lump-sum payment to start a college fund for the children.

On August 22, 2012, Papineau filed a motion to modify child support, asking in part for reimbursement of the child support payments he made to Stephenson during the months for which Stephenson, on behalf of the minor children, ultimately received the retroactive lump-sum payment of Papineau's Social Security disability benefits. The parties submitted the motion to the district court on stipulated facts. The parties agreed in district court that the Social Security payments of $802 per month for the benefit of the minor children satisfied Papineau's current child support obligation. The only issue for the district court to decide was whether Papineau was entitled to reimbursement of the child support pay-

ments he made to Stephenson during months for which Stephenson ultimately received the retroactive lump-sum payment.

According to the stipulated facts, Standard claims subrogation rights to all Social Security disability benefits received by Papineau and his minor children, including the retroactive lump-sum payment awarded for the benefit of the minor children. But Standard is not a party to this case, and the status of its subrogation claim is not clear from the record on appeal.

The district court denied Papineau's motion to modify child support. Relying on *In re Marriage of Hohmann*, 47 Kan. App. 2d 117, 274 P.3d 27 (2012), *rev. denied* 297 Kan. 1245 (2013), the district court found that Papineau was not entitled to reimbursement of any child support payment in excess of the amount owed because the excess benefit is a gift that inures to the benefit of the children. The district court further found that any subrogation claim by Standard was irrelevant because the insurance company would have no right of subrogation against benefits that belong to the minor children, who are not parties to the insurance contract. Papineau timely appealed the district court's order.

On appeal, Papineau again contends that the district court erred in finding that he was not entitled to reimbursement of child support payments that he made during months for which his minor children ultimately received a retroactive lump-sum payment of his Social Security disability benefits. He acknowledges that as a general rule in Kansas, when a minor child receives Social Security disability benefits as part of an obligor parent's Social Security disability award, any amount in excess of the child support owed by the obligor parent is considered a gratuity that inures solely to the benefit of the child. See *Hohmann*, 47 Kan. App. 2d at 118-21 (citing *Andler v. Andler*, 217 Kan. 538, 542-44, 538 P.2d 649 [1975]; *In re Marriage of Williams*, 21 Kan. App. 2d 453, 454-56, 900 P.2d 860 [1995]). Papineau concedes that to the extent that the $802 per month that his minor children receive from his Social Security disability benefits exceeds the $782 per month he owes in child support, the excess inures solely to the benefit of the children.

But Papineau argues that his children did not merely receive excess benefits but in fact received double benefits for certain

months, *i.e.*, once when he paid child support on time and in full, and again when the children received a retroactive lump-sum payment of his Social Security disability benefits covering months for which he already had paid child support. He points out that if his children had received his Social Security disability benefits contemporaneously rather than retroactively for those months, his child support obligation for those months would have been fulfilled. Papineau claims that his children have no legal or equitable right to a double payment and that as a policy matter, refusing to reimburse an obligor parent for child support payments made while a Social Security disability claim is pending creates a disincentive for the obligor parent to remain current on his or her child support payments.

Finally, Papineau argues that this court should equitably consider the fact that Standard is seeking subrogation of his Social Security disability benefits paid for the benefit of his minor children. He contends that if Standard is successful in its subrogation claim, he effectively will be required to pay his child support obligation three times for the relevant months, *i.e.*, first as a regular child support payment, second as a Social Security disability benefit, and third in repayment to Standard.

The sole issue on appeal is whether an obligor parent is entitled to reimbursement of child support payments made during months for which the minor children ultimately receive a retroactive lump-sum payment of the obligor parent's Social Security disability benefits. This is a question of law, over which an appellate court has unlimited review. See *Hohmann*, 47 Kan. App. 2d at 119.

Kansas courts have never squarely decided the issue presented in this case. But several cases are instructive, beginning with the Kansas Supreme Court's decision in *Andler*. In that case, the father began making child support payments to his former wife on behalf of their minor children in January 1970. That same month, the former wife began receiving the father's Social Security disability benefits on behalf of the minor children. The father made four child support payments (January to April 1970) before he discontinued the payments because he had no money with which to make them. In August 1973, the former wife brought a motion for con-

tempt against the father for failure to pay child support. The district court terminated the father's obligation to make future child support payments because his future obligation was satisfied by the monthly Social Security disability benefits, but the district court found that the father had a judgment against him for the previously accrued unpaid child support.

On appeal, our Supreme Court reversed the district court's determination that the father had a judgment against him for the previously accrued unpaid child support. Our Supreme Court held that where a father who has been ordered to make child support payments becomes totally and permanently disabled and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under a divorce decree to the extent of, but not exceeding, his monthly obligation for child support. 217 Kan. at 544. In reaching this decision, our Supreme Court rejected the district court's reasoning that the father waived his right to seek relief because he made four child support payments after the disability benefits had commenced:

"It is apparent the [father] was unaware of his legal remedy, if any, when he made the first four child support payments. His failure to immediately assert such remedy does not waive his right to seek relief in a case such as this. The [father] asserted a good faith effort, and clean hands under equitable principles, until he had exhausted his financial resources. *Under the circumstances here presented the four payments of child support . . . must be regarded as gratuities for the children.* [Citation omitted.]" 217 Kan. at 545.

The next case dealing with this topic is *Williams*. In that case, the father was ordered to pay $250 per month in child support for his minor child. He stopped making those payments in December 1986. In 1989, the Social Security Administration found the father to be totally disabled due to a mental condition and began paying disability benefits in the amount of $555 per month on behalf of the minor child. Eventually the father asked the district court to apply the excess disability payment ($305 per month) to his child support arrearages that had accrued before the father became disabled. The district court ruled that the disability benefits received

by the minor child were to be credited against current support then due, but that the father was not entitled to any credit against past-due support.

On appeal, this court affirmed the district court's ruling and held that a child's Social Security benefit payments may be credited against a current child support obligation accruing during the corresponding month but may not be credited against past-due child support obligations accruing prior to the start of the Social Security benefit payments. 21 Kan. App. 2d at 455-56. This court found that the excess benefit results in a windfall that should inure to the benefit of the child, not the defaulting father. 21 Kan. App. 2d at 456.

We recognize that the facts presented in *Andler* and *Williams* are distinguishable from the facts herein. In *Andler* and *Williams*, the court was not faced with a situation where the minor children were awarded a retroactive lump-sum payment of Social Security disability benefits. Also, in *Andler* and *Williams* the father had defaulted on the child support obligation, whereas Papineau made all child support payments on time from the date of his disability until the date he filed his motion to modify child support.

More recently, this court addressed the issue of disability payments and child support in *Hohmann*. In that case, the issue was whether a disabled father's child support arrearages could be satisfied by a retroactive lump-sum payment to the mother, on behalf of the minor children, of the father's Social Security disability benefits covering the months during which the arrearages accrued. The mother argued that if the court allowed the retroactive lump-sum payment to apply to child support arrearages accrued during the months covered by the lump-sum payment, then by logical extension if there was no arrearage she would have to reimburse the father for the timely child support payments that he had made. This court declined to rule on the mother's hypothetical factual scenario but noted that "the majority of courts who have decided this issue have found that the nonobligor parent is not required to return such 'overpayments' to the obligor parent. Most courts view it as a voluntary overpayment that inures solely to the benefit of the child. [Citations omitted.]" 47 Kan. App. 2d at 121. This court

ultimately ruled that the retroactive lump-sum payment of the father's Social Security disability benefits could be applied to the child support arrearages that accrued during the months covered by the retroactive lump-sum payment. 47 Kan. App. 2d at 121.

Finally, in *In re Marriage of Taber*, 47 Kan. App. 2d 841, 280 P.3d 234 (2012), *rev. denied* 298 Kan. 1202 (2012), this court reaffirmed its decision in *Hohmann* that an obligor parent's child support arrearages could be satisfied by a retroactive lump-sum payment of Social Security disability benefits covering the months during which the arrearages accrued. But like the mother in *Hohmann*, the Kansas Department of Social and Rehabilitation Services argued hypothetically in *Taber* that if an obligor parent has timely paid his or her child support and subsequently the children receive a retroactive lump-sum payment covering months already paid by the obligor parent, then the nonobligor parent would be required to reimburse the obligor parent for the overpayment. This court again noted that the majority of courts take the view that no reimbursement is required because the overpayment is deemed a gift to the children. 47 Kan. App. 2d at 846. This court specifically noted that in *Andler*, the four child support payments made by the father during months for which his children also received his Social Security disability benefits were "regarded as gratuities for the children." *Taber*, 47 Kan. App. 2d at 846 (quoting *Andler*, 217 Kan. at 545).

In *Hohmann* and *Taber*, this court responded to a hypothetical argument that now is squarely presented in the case herein. In both decisions, this court surmised that a nonobligor parent would not be required to reimburse an obligor parent for what could be deemed as overpayments of child support caused by a retroactive lump-sum payment of Social Security benefits. Although the dicta in *Hohmann* and *Taber* is not controlling here, we find that these decisions provide persuasive authority for the proposition that an obligor parent is not entitled to reimbursement for timely child support payments made during months for which the minor children ultimately receive a retroactive lump-sum payment of the obligor parent's Social Security disability benefits.

Papineau argues that his children have no legal or equitable right to a double payment of child support, which he claims they are receiving unless he is reimbursed for the child support he paid during the months covered by the retroactive lump-sum disability payment. But as this court noted in *Hohmann* and in *Tabor*, courts in other jurisdictions have considered and rejected this argument. For example, in *Keith v. Purvis*, 982 So. 2d 1033 (Miss. App. 2008), the noncustodial father was ordered to pay child support in the amount of $350 per month on behalf of his minor child. In 2001, the father suffered a stroke and became disabled, but he faithfully met his child support obligations until August 2006. The father and child became eligible for Social Security disability benefits, and in September 2006, the child received a retroactive lump-sum payment of $20,164. The father petitioned the court for an order requiring his former wife to reimburse him for child support payments he made during the 22-month period covered by the retroactive lump-sum disability award received by the child. The district court ruled that the father was not entitled to reimbursement of child support.

On appeal, the Court of Appeals of Mississippi held that the district court did not err in denying the father reimbursement for support payments made during the 22-month period covered by the lump-sum payment of retroactive disability benefits subsequently received by the child. 982 So. 2d at 1038-39. The court determined that the Social Security disability benefits received by the child belonged to the child and rejected the father's claim of a double payment:

"[The father's] claim for reimbursement is essentially a claim of unjust enrichment. However, we find that [the father] has not 'overpaid' his support obligation, in that, the disability benefits [the child] received from the Social Security Administration never belonged to [the father]. On this point, the court in [*Mask v. Mask*, 95 N.M. 229, 620 P.2d 883 (1980),] authoritatively stated as follows in determining that social security benefits received by a child belong to the child and not the non-custodial parent:

" 'The Social Security Act, Title 42, U.S. Code, Section 401 *et seq.*, provides that every dependent child of an individual who is entitled to Social Security benefits shall be entitled to a child's insurance benefit. . . . We determine from this that the benefit inures directly to the child, notwithstanding the prereq-

uisite status of the parent. No indices of the father's ownership ever attached to these funds.'

*Mask*, 620 P.2d at 886 (quoting *Fuller v. Fuller*, 49 Ohio App. 2d 223, 360 N.E.2d 357, 358 [1976]. Because the excess money received by [the child] did not belong to [the father], we fail to see how he can prevail on the theory of unjust enrichment." *Purvis*, 982 So. 2d at 1038-39.

In another case, *Steel v. Hartwick*, 209 W. Va. 706, 551 S.E.2d 42 (2001), the noncustodial father was ordered to pay child support for his two minor children. In 1995, he sustained a severe injury in the course of his employment and was unable to work. He nonetheless continued to make child support payments, apparently out of workers' compensation and other job benefits. In August 1997, the father was notified that he was entitled to Social Security disability benefits retroactive to July 1995. As part of the award, his former wife, as representative payee for his dependent children, also became entitled to Social Security disability benefits retroactive to July 1995 in the amount of $6,709 for each child. When the award was made, the father petitioned the court to require his former wife to reimburse him for the child support payments he made from July 1995 through August 1997. In his petition, he claimed that because his former wife, as representative of the children, received a Social Security disability award for the children, she, in effect, was paid twice for support for the children and she was unjustly enriched. The district court refused to require the former wife to reimburse the father for past child support payments which had already been paid.

On appeal, the Supreme Court of Appeals of West Virginia affirmed the district court, held that the children had a legal right to receive both child support and lump-sum retroactive Social Security payments for the same 2-year period, and thus the father was not entitled to reimbursement under a theory that his former wife was unjustly enriched. 209 W. Va. at 709-10. In reaching this conclusion, the court stated:

"The children in the present case had a legal right under court and administrative orders, to both the child support and the social security benefits in issue in this case, and this Court can find no inequitable conduct on the part of the children, or unjust enrichment on their part, which in the Court's view, would support a legal basis for depriving them of their property." 209 W. Va. at 709.

Papineau has not cited a compelling reason why this court should depart from the general rule that any excess Social Security disability payment beyond the minimum child support obligation is considered a gratuity that inures solely to the benefit of the child. When Papineau became permanently and totally disabled in 2010, he could have filed a motion to modify child support if he was unable to make his child support payments. Papineau chose not to file a motion to modify child support in 2010, presumably because the disability payments he received from Standard were sufficient for Papineau to satisfy his child support obligation. It is to Papineau's credit that he continued to make all child support payments on time while his Social Security disability claim was pending, but under Kansas law any excess payments inure solely to the benefit of his children. Papineau argues that he would have been better off not making timely child support payments while his Social Security case was pending. While that may be true, his children certainly would not have been better off if Papineau had defaulted on his child support obligation, and such a default could have subjected Papineau to a judgment for accrued/past-due child support or a finding of contempt by the district court.

Papineau financially supported his minor children prior to August 2012, pursuant to court order and his common-law duty as a parent. Now that his children have received Social Security benefits covering part of the time for which they received child support, Papineau essentially wants his children to pay back the child support to prevent them from receiving a "windfall." Papineau views his child support obligation as something akin to an account ledger that can and should be reconciled at the end of the fiscal term. But if Papineau and Stephenson had been married when he became disabled, the family would have done its best to use its resources, including the disability benefits paid by Standard, to meet the children's needs. In that situation, Papineau would not be entitled to reimbursement from his children once they received Social Security disability benefits covering the same period of time. Likewise, Papineau fails to make a case that he now is entitled to reimbursement of child support simply because he and Stephenson are divorced.

Furthermore, even if Papineau is legally entitled to a reimbursement of child support, we are unable to discern from the record how the district court was expected to calculate the amount of the reimbursement. The parties stipulated that Stephenson "has received or will receive retroactive benefits of approximately $5,600.00 from the Social Security Administration on behalf of the minor children." The parties further stipulated that "the retroactive benefits received on behalf of the children equate to $802.00 per month." Presumably, Papineau believes he is entitled to reimbursement of child support for approximately 7 months, but the record does not identify the 7-month period covered by the retroactive lump-sum payment. Papineau certainly is not entitled to reimbursement of the entire $5,600 lump-sum payment. At most, he would be entitled to reimbursement of $782 per month for the months covered by the retroactive payment. As Papineau concedes, the excess lump-sum payment inures solely to the benefit of his children.

Finally, Papineau argues that this court should equitably consider the fact that Standard is seeking subrogation of the Social Security disability benefits paid for the benefit of his minor children. But Standard is not a party to this action, and the status of the subrogation claim is not clear from the record on appeal. Thus, this court has no basis to consider whether Standard has a valid subrogation claim and how the subrogation claim may affect the Social Security disability benefits paid on behalf of the minor children. Based on the record herein, we conclude that the district court did not err in denying Papineau's motion to modify child support.

Affirmed.

\* \* \*

ATCHESON, J., dissenting: When Gregory J. Papineau and his minor children began receiving disability benefits from the Social Security Administration because he was physically no longer able to work, those payments to his sons could be offset against his ongoing child support obligations. The Kansas Supreme Court says so. *Andler v. Andler*, 217 Kan. 538, Syl. ¶ 4, 538 P.2d 649 (1975).

Had Papineau failed to pay child support while the Social Security Administration considered his application for disability benefits, the lump-sum payment reflecting retroactive benefits for his sons for that period would have been applied to his delinquent child support. This court says so. *In re Marriage of Hohmann*, 47 Kan. App. 2d 117, 121, 274 P.3d 27 (2012), *rev. denied* 297 Kan. 1245 (2013). But Papineau's former wife, the district court, and the majority say Papineau should receive no accommodation for the child support he *did* pay as he awaited a decision from the Social Security Administration on his disability benefits. Based on the parties' briefing and the limited caselaw in Kansas and elsewhere, I can discern no sensible reason for that dichotomy, so I respectfully dissent in the belief that the law generally ought to be sensibly consistent.

The majority opinion lays out the material facts. The record in the district court is notable for its brevity. The stipulated facts are just two pages. When Papineau and Jeri D. Stephenson divorced in 2006, she had principal physical custody of their sons, and Papineau was required to pay child support of $782 a month. He did so. Papineau suffered a physical injury in 2010 and could no longer work. He applied for Social Security disability benefits. In the meantime, he received money through a private disability insurance policy. Papineau used some of the insurance money to pay his child support as the Social Security disability application was being processed. When the application was approved, Papineau began receiving monthly Social Security disability benefits. The Social Security Administration also started paying benefits of $802 a month for the children. Those benefits went to Stephenson as the "representative payee" of the children because they lived with her. In addition, the Social Security Administration made a lump-sum payment for the children of $5,600, reflecting their retroactive disability benefits for the 7 months or so it took to process Papineau's application. Papineau never faltered in paying his child support during that time.

Papineau filed a motion in the district court to recover the equivalent of that child support after the Social Security Administration approved the disability benefits and made the retroactive lump-

sum payment for the children. The district court denied his motion, and the majority upholds that decision—apparently fashioning an implacable rule depriving anyone in Papineau's position an accommodation for child support payments duplicating retroactive Social Security disability benefits. The outcome looks to be inexplicably inconsistent with the logical extension of Kansas law.

Based on the stipulated facts, reflecting the only evidence submitted to the district court, I would find that Papineau ought to be given credit for the child support he paid during the 7-month period covered by the retroactive lump-sum Social Security disability benefit to his sons. So far as the record on appeal indicates, neither the parties nor the district court addressed how best to make that accommodation. I would be disposed to remand to the district court for that purpose.

I.

In *Andler*, 217 Kan. 538, Syl. ¶ 4, the Kansas Supreme Court held that monthly Social Security disability benefits going to a minor child because of a parent's inability to work should be credited against that parent's child support obligations for the same month. The ruling seems unremarkable, since both types of payments further the same objective—insuring essential financial support of a minor child in an amount keyed to a parent's earnings. The court also held that if the monthly disability benefit exceeds the monthly child support obligation, the excess amount should be treated as a "gratuity" to the child, meaning it could not be given to the disabled parent or credited against future child support obligations. 217 Kan. at 544. Andler's disability benefits began the same month as his child support obligations, so the court did not have to address the treatment of a retroactive payment from the Social Security Administration. For whatever reason, however, Andler made four monthly child support payments after the Social Security disability benefits started, something he was not legally obligated to do. Because Andler had no legal duty, the court treated those support payments as gratuities or gifts to the children.

Last year, this court held that the retroactive lump-sum Social Security disability benefit for a child could be credited against the

noncustodial parent's delinquent child support payments for the time period that benefit covered. *In re Marriage of Hohmann*, 47 Kan. App. 2d at 121. The facts of *Hohmann* involved only delinquent child support, so the court was not required to decide the question before us here and, in considering an argument from the parties, expressly declined to do so. 47 Kan. App. 2d at 121. The *Hohmann* decision, however, noted that courts in some jurisdictions have denied disabled parents any recovery of or credit for child support they actually paid while the Social Security Administration considered their applications, even against the retroactive lump-sum payments to their minor children for the same time. 47 Kan. App. 2d at 121. But, as I discuss in Section V, that case authority is remarkably limited, even more so than *Hohmann* suggests. By the same token, as I also note, contrary authority directly supporting my view is in short supply.

This court recognized and reaffirmed the holding of *Hohmann* in *In re Marriage of Taber*, 47 Kan. App. 2d 841, 843, 280 P.3d 234 (2012), *petition for rev. filed* July 20, 2012. This court again allowed a disabled parent a credit against his delinquent child support in the amount of the retroactive lump-sum Social Security disability benefit to his child. To do otherwise, the court said, would "penalize" the parent for the Social Security Administration's delay in processing his application for benefits. 47 Kan. App. 2d at 844.

The *Taber* court also alluded to the treatment of a retroactive lump-sum disbursement of disability benefits when the disabled parent has paid all due child support. 47 Kan. App. 2d at 846. The decision cited the same out-of-state authority mentioned in *Hohmann*. The court went on to characterize the child support payments as "voluntary" and, thus, gratuitous, seemingly borrowing from *Andler. Taber*, 47 Kan. App. 2d at 846. It then suggested that the Kansas Supreme Court actually addressed this particular issue in *Andler*, although that's an overly broad characterization, and pronounced that "reasoning to be sound." *Taber*, 47 Kan. App. 2d at 846.

In *Andler*, however, the disabled parent made child support payments *after* he had been approved for Social Security disability benefits and his children had begun receiving those monthly ben-

efits. That's different from a disabled parent, such as Papineau, who continues paying child support once he or she has applied for disability benefits but before the Social Security Administration has acted on the application. When the disability benefits to Andler's children began, he was no longer under a legal obligation to pay child support to the extent of those benefits. And the disability benefits exceeded the child support, thereby extinguishing that obligation. So Andler's child support payments fairly could be viewed as voluntary. Conversely, Papineau remained subject to an order entered in the divorce to pay child support, so his actions in doing so weren't voluntary in the sense that he had a legal duty to comply with that order. And the Social Security disability benefits were, at best, contingent, since his application hadn't been approved or denied. In any event, the discussion in *Taber* bore on an argument from the parties rather than on the determinative facts of that case.

In short, the Kansas appellate courts have not ruled on the issue presented here. The limited discussion of gratuitous payments in *Andler* is factually inapposite, as the majority acknowledges. The *Hohmann* decision recognizes the issue, sidesteps it without venturing an opinion, and then simply observes that other jurisdictions have considered it. The *Taber* decision offers dicta that would deny relief to Papineau but does so with an arguably off-kilter assessment of *Andler*. Unlike my colleagues, I find nothing in either *Hohmann* or *Taber* that persuasively augurs for the conclusion they reach today.

## II.

Given the actual holdings in *Andler*, *Hohmann*, and *Taber*, I cannot see a good reason for the result in this case. As I have said, each of those decisions recognizes monthly Social Security disability payments received by a minor child because of a parent's inability to work reduce that parent's child support for that month. As a result, the child effectively is legally entitled to receive an amount equal to the greater of the disability benefit or the child support. The *Hohmann* decision—with an obvious bow to consistency and sensibility—extends that rule to circumstances in which a disabled parent has been unable to keep up child support pay-

ments while awaiting a decision from the Social Security Administration on an application for disability benefits. So a retroactive lump-sum disability benefit covering the application review period offsets the unpaid child support for that period. The child, then, ultimately receives the greater of the monthly disability benefit or the monthly child support for that time—albeit after the money actually was due. The ruling in *Taber* reapplies *Hohmann* to essentially comparable factual circumstances involving delinquent child support.

But this case comes to a markedly different outcome simply because Papineau paid his child support, a fact that doesn't add up to a logical or legal justification for the difference. Papineau's sons received the child support due them as his application for Social Security disability was being processed. They fared better during that time than the children of someone unable to make the support payments because of an injury. (Default and delinquency would seem a fairly common occurrence when a wage earner becomes incapacitated.) After Papineau had been approved for disability benefits, his children received an amount for the benefits due them during the 7 months his application had been pending. As things now stand, the children have received both child support payments and disability benefits for that period. Papineau, however, cannot get back an amount equivalent to those child support payments or obtain some comparable accommodation. So he is now worse off than the disabled parent who went delinquent on child support. And the legal process has allocated the same financial resources— child support and disability benefits—to Papineau's detriment because he timely satisfied his legal obligation to pay support when that obligation effectively would be extinguished for someone who had not.

The result here is inconsistent with *Andler*, *Hohmann*, and *Taber*. The logical extension of those cases would apply the same rule and reach the same outcome: The children should receive the greater of the disability benefits or the child support payments for the 7 months Papineau's application lingered with the Social Security Administration awaiting a determination. The majority chooses to penalize Papineau for the agency's delay.

Such a pronounced inconsistency ought to require a compelling rationale. Here—based on all that appears in the record, the briefing, the majority opinion, and the discernible outside authority—no such justification turns up. What we have instead is an outcome that looks to be arbitrary in the face of *Andler*, *Hohmann*, and *Taber*. The law eschews arbitrary results, as well it should, for unfairness shadows caprice in judicial matters. Unless I am missing something (a possibility for which I make considerable allowance in this case), fairness seems to call for Papineau to be treated the same as the disabled parents with child support obligations in *Andler*, *Hohmann*, and *Taber*.

## III.

The common purpose of child support payments and Social Security disability benefits justifies granting Papineau some form of accommodation. The child support payments represent that portion of Papineau's income the district court determined he fairly ought to contribute toward meeting the children's needs and, thus, what he presumptively would have spent for that purpose had the family unit remained intact. See *Ediger v. Ediger*, 206 Kan. 447, 454, 479 P.2d 823 (1971).

When a wage earner becomes disabled and can no longer work, the Social Security Administration pays disability benefits to the worker and to his or her minor children. The benefits are keyed to the individual worker's income and lifetime earnings with certain upper limitations on the total amount paid. The program is funded, in part, with contributions workers make from their earned income, so it functions as a form of insurance. See *Andler*, 217 Kan. at 542-43; *In re Marriage of Henry*, 156 Ill. 2d 541, 550-51, 622 N.E.2d 803 (1993); *Martin v. Martin*, 70 Mass. App. 547, 549-50, 874 N.E.2d 1137 (2007). The benefit paid directly to a given worker roughly reflects that portion of his or her earnings he or she would have spent to support himself or herself. The benefit allowed for a minor child reflects the amount of income the worker would have used to support that child. *Marriage of Henry*, 156 Ill. 2d at 551; *Brown v. Brown*, 849 N.E.2d 610, 614 (Ind. 2006). The disability benefit, then, fulfills the same financial purpose as child support

when the family unit has been divided by divorce. *Marriage of Henry*, 156 Ill. 2d at 551 ("[T]he source and the purpose of social security dependent benefits are identical to the source and purpose of child support—both come from a noncustodial parent's wages or assets and both provide for the needs of the dependent child . . . ."); *Holmberg v. Holmberg*, 578 N.W.2d 817, 827 (Minn. App. 1998), *aff'd on other grounds* 588 N.W.2d 720 (Minn. 1999). In that respect, receipt of both child support and disability benefits is duplicative. That's a fundamental reason the *Andler* court recognized the monthly disability benefits should offset the disabled parent's monthly child support obligation. It also reflects a sound reason Papineau ought to be granted some form of allowance for the child support he paid for the 7 months his disability benefit application was pending, since the retroactive benefit fulfills the same need and serves the same public policy objective as those child support payments.

Minor children receive Social Security disability benefits whether they live in an intact household or with a divorced parent because the money is meant to replace the disabled parent's lost income. Children experience that financial harm either way. Had the Papineau-Stephenson household been intact when he became disabled, the family presumably would have used some of the disability insurance money to pay for the children's essential needs during the time the application for Social Security disability benefits was pending. That's comparable to what Papineau actually did to meet his child support obligation and, thus, to take care of his sons' financial needs.

Parents have a common-law duty to financially support their minor children. *State ex rel. Secretary of SRS v. Bohrer*, 286 Kan. 898, 906, 189 P.3d 1157 (2008); see *Arche v. United States of America*, 247 Kan. 276, 290-91, 798 P.2d 477 (1990) (parental duty of support does not extend to incompetent adult child). That's true for intact households and those split by divorce. The duty requires parents to meet the reasonable needs of their children but doesn't require they bathe them in luxury. Court-ordered child support theoretically reflects an amount aimed at meeting or exceeding that duty based on a parent's income, although it may not in every

instance. Here, by paying his child support, Papineau fulfilled his legal duty to support his children. No one has suggested their essential needs were unmet.

Social Security disability benefits embody a public policy determination that the federal government should step in to fulfill a parent's legal duty to financially support his or her children when that parent can no longer work because of a disability. To that end, Papineau's sons have received disability benefits. Again, no one suggests those benefits have failed to satisfy Papineau's legal duty to support his children.

As a result of those combined child support payments and retroactive disability benefits, Papineau's legal duty has been twice met for the 7 months the Social Security Administration took to review and approve his application. And in deciding Papineau's motion, the court has been asked to iron out that anomaly. The best solution ought to conform to the legal rights and duties of the parties. Papineau's legal duty under both the common law and the court order in the divorce was satisfied when his children received a monthly amount corresponding to the child support. Whether the source of the money was a check Papineau wrote or a United States Treasury draft for disability benefits generated as a result of Papineau's inability to work is immaterial. Neither Stephenson nor the children had a legal right to require more of Papineau. And while Papineau could have given his children more than the child support payments, he had no legal duty to do so. The appropriate judicial resolution calls for an adjustment or accommodation in Papineau's favor, since that result would correspond to the relevant rights and duties.

As I indicated, I would be inclined to remand the case to the district court to determine the precise accommodation and how it ought to be accomplished. I presume it would entail Stephenson reimbursing Papineau for some or all of the child support he paid during the 7-month period. But it could take the form of a credit against particular expenses for the children for which Papineau might have an obligation under the divorce decree distinct from

the child support itself, such as uninsured healthcare costs. See, *e.g.*, *LaMothe v. LeBlanc*, 193 Vt. 399, 70 A.3d 977 (2013).

Any payment from Stephenson to Papineau, either in a lump sum or in smaller periodic amounts, ought to be tailored to avoid financial hardship. A district court would have the broad discretionary authority to structure the accommodation to prevent undue burden. It is, at best, debatable whether part of the retroactive lump-sum disability benefit to the children could be given to Papineau for that purpose, even by court order. Nothing in the most obviously pertinent federal statutes and regulations expressly prohibits that sort of transfer to the disabled worker, but nothing expressly allows it either. I, therefore, assume that the district court could not direct Stephenson to do so.

The representative payee receiving disability benefits for children—here Stephenson—is supposed to first use them for "current maintenance" including "food, shelter, clothing, medical care, and personal comfort items." 20 C.F.R. § 404.2040(a) (2013). The expenditures, however, need not be for the exclusive benefit of the children and may inure to the mutual benefit of the children and others in the household so long as they are in the best interests of the beneficiaries. *Taber*, 47 Kan. App. 2d at 845 (citing Social Security Administration materials advising that benefits may be used for furniture and home improvements among other things); A Guide For Representative Payees, Social Security Administration Publication No. 05-10076, at 7-8 (2009), *http://www.social security.gov/pubs/EN-05-1079.pdf* (accessed August 9, 2013) (representative payee may use benefits in excess of current maintenance for things such as home improvements; furniture, noting as an example a television used by beneficiary and others in household; and sports and recreational activities). The lump-sum Social Security benefits could be used for those purposes, substituting for household funds that otherwise would have been spent on them. The household funds would then be available as a source for reimbursing the child support payments.

As the majority points out, the lump-sum disability payments for Papineau's children have been earmarked for college education and placed in an account for that purpose. That, of course, indi-

cates the children's current maintenance needs have otherwise been met. Saving for college is a laudable goal. But it is not one for which Social Security disability benefits to dependent children are intended. Those benefits cease when the recipient child turns 18 years old unless he or she remains in elementary or secondary school, thereby permitting a year's extension. 42 U.S.C. § 402(d)(1)(F) (2006). Other government programs assist young adults in paying for postsecondary education.

The district court's ruling and the majority's decision effectively compel Papineau to contribute about $5,600 to a college fund for his sons, something he has no legal obligation to do under the divorce decree or otherwise. See *Arche*, 247 Kan. at 290-91 (common-law duty of parental support ends when child reaches age of majority). Although Papineau might be more than willing to pay those college expenses were he in other financial circumstances, the law (at least until now) would not have forced that obligation upon him.[1]

[1] I agree with the majority that the subrogation issue between Papineau and his private disability insurance carrier is not before us and was not presented to the district court in a way that would have permitted its resolution. The parties mention the subrogation claim in the stipulation. Neither the insurance policy nor any other documents related to the subrogation issue were made part of the record. The insurance carrier was not a party in the district court, so its rights and obligations could not have been adjudicated. By the same token, we cannot make any reasoned, let alone binding, determination about Papineau's contractual obligation to repay the insurance carrier. Nor can we reasonably account for that speculative concern in weighing Papineau's motion.

### IV.

The parties properly have used a motion directed to Papineau's child support obligation filed in the divorce case to raise this issue rather than resorting to an independent action based on unjust enrichment or some other legal theory naming Stephenson as a defendant personally or as the legal representative of the children. The majority, however, faults Papineau for not moving to modify his child support obligations when he first became disabled or when he submitted his application for disability benefits to the Social Security Administration. At least two jurisdictions treat such

a failure as an absolute bar to any relief based on duplicative payment. See *Newman v. Newman*, 451 N.W.2d 843, 845 (Iowa 1990); *Pestell v. Pestell*, No. M2005-00749-COA-R3CV, 2006 WL 2527642, at *3-5 (Tenn. App. 2006) (unpublished opinion) (recognizing statutory bar under Tenn. Code. Ann. § 36-5-101[f][1] [2001]). The majority does not characterize Papineau's failure that way. But it doesn't need to, since it adopts a rule prohibiting an accommodation under any circumstances for child support that has been paid. Because I find the majority's categorical prohibition incompatible with Kansas law, I also need to address this secondary argument.

On the record before us, I can't see that an earlier motion from Papineau would have materially changed anything. More generally, the failure of disabled, noncustodial parents to move for reduction of their child support when they become disabled or apply for Social Security benefits should not absolutely bar relief sought after those benefits have been approved.

First, as to this case, Papineau received money from his private disability insurance policy replacing income he lost because he was physically unable to work. The record contains no information as to the amount of the insurance payments, their regularity, or if they continue. In the absence of any useful information, we might infer those payments have been made on some periodic basis (*e.g.*, weekly, semi-monthly, or monthly) and correspond to a percentage of the income Papineau earned at his work. We can conclude those insurance payments would have been treated as income for purposes of recalculating the amount of Papineau's child support. In *In re Marriage of Callaghan*, 19 Kan. App. 2d 335, 336-37, 869 P.2d 240 (1994), this court held that Social Security disability benefits should be treated as income in determining the amount of a disabled parent's child support obligation precisely because those benefits were in the nature of insurance payments intended to replace lost income rather than "public assistance" intended to avoid destitution. See *Andler*, 217 Kan. at 543 (likening Social Security disability benefits to "benefits paid out by a private insurance company"). It necessarily follows that payments to a noncustodial parent from a private disability insurance policy intended to replace

lost earnings would constitute income within the broad definition used to set child support. See *In re Marriage of Branch*, 37 Kan. App. 2d 334, 338, 152 P.3d 1265 (severance payment to laid-off worker treated as income for child support purposes because it was substitute for lost wages), *rev. denied* 284 Kan. 947 (2007).

A party may seek a modification of child support based on materially changed circumstances if less than 3 years have passed since the divorce decree was entered or the support last modified. K.S.A. 2012 Supp. 23-3005(a). Otherwise, a change in circumstances is not legally necessary. Based on the stipulated facts, Papineau could have filed a motion to modify without changed circumstances. But, given the stipulated facts, he may have been unable to show any significant loss of income and, therefore, would have had no practical basis or colorable argument for reducing his child support. The source of his income changed from his own labor to the insurance payments, but nothing in the record indicates the amount did to any appreciable extent. Absent evidence of a drop in Papineau's income, I cannot say the district court would have modified his child support payments. So that simply cannot be an issue in this case.

To the extent Stephenson wished to rely on Papineau's failure to file a motion to modify his child support obligations when he became disabled or first sought Social Security benefits as a defense to the motion he actually filed much later, she had an obligation to include sufficient information in the stipulated facts or to otherwise present evidence to the district court to support that argument. She has not. In the absence of that information, Stephenson cannot show that an earlier hearing would have been anything other than an empty exercise. This court ought not assume otherwise. Given the state of the record, I would not hold against Papineau his failure to seek a modification of his child support any earlier than he did.

Apart from this case, the failure of a disabled, noncustodial parent to file a motion to adjust child support obligations at the time of disability or of application for Social Security benefits should not create an insuperable bar to a later motion for an adjustment based on a child's receipt of retroactive disability benefits. The Iowa Su-

preme Court has adopted just such a per se bar, denying relief if the noncustodial parent had not filed a motion to modify child support before receiving Social Security disability benefits. *Newman*, 451 N.W.2d at 845. The resulting rule is both unambiguous and ruthless in its efficiency. It is also blind to reality. Not surprisingly, disabled workers without alternative sources of income often simply default on their child support obligations. If they haven't the money to pay child support, they presumably haven't the money to hire lawyers to argue that the obligation ought to be reduced because they have no money. To suggest they simply do it themselves is no answer. Self-representation is both an intimidating course and a perilous one. See *Stormont-Vail Healthcare, Inc. v. Zoble*, No. 103,353, 2010 WL 4157102, at *1 (Kan. App. 2010) (unpublished opinion) (noting the difficulties nonlawyers face in representing themselves in civil actions).

An absolute bar would be inconsistent with *Hohmann*. There, the noncustodial parent defaulted on his child support and sought judicial relief only after the Social Security Administration began providing disability benefits. He received a dollar-for-dollar reduction of his delinquent child support for the retroactive lump-sum Social Security disability benefits going to his child. The court found no bar based on the timing of the motion. See 47 Kan. App. 2d at 118-21.

Nothing in *Hohmann* suggested there would have been a different result if the disabled parent could have hired a lawyer to file a motion for a reduction in child support any earlier. A rule tying potential relief to a noncustodial parent's wherewithal to hire a lawyer or to otherwise file a motion to reduce child support shortly after a disability occurs (or an application for disability benefits is submitted) would become mired in almost infinitely variable circumstances leading to inconsistent decisions across cases and courts. It would be unworkable.

In any event, reasoned consistency suggests that a party defaulting on a child support order shouldn't be treated more favorably than a party complying with an order when neither seeks a modification based on changed financial circumstances attributable to a disability and waits until the Social Security Administration begins

paying disability benefits. In short, the no-absolute-bar approach in *Hohmann* should be extended to Papineau and others in his situation.

Ultimately, the district court should consider all of the relevant circumstances in deciding a motion such as Papineau's, just as it may with motions to modify the amount of child support. See *In re Marriage of VanderVoort*, 39 Kan. App. 2d 724, 731-32, 185 P.3d 289 (2008) (noting mandatory use of child support guidelines in fixing amount of support subject to written findings from a district court explaining any deviation). The motion before us, however, does not seek a change in the amount of monthly child support but an accommodation or reconciliation for duplicative payments from different sources. If anything, that expands the scope of relevant circumstances a district court may consider in fashioning relief for the disabled, noncustodial parent.

That brings me to Papineau's observation that the majority's rule—denying any accommodation—creates an incentive for disabled, noncustodial parents to stop paying child support after they submit applications for Social Security disability benefits, even if they remain financially able to pay. Under the majority's rule, if they continue to pay child support and later are approved for Social Security benefits, they get no credit or accommodation for the child support covering the time the Social Security Administration reviewed the application, a period for which retroactive disability benefits will be granted to the children. Were they simply to stop paying, they could argue the *Hohmann* decision permits them a credit against the delinquent child support for the retroactive disability benefits to the children.

The approach I suggest, typically allowing an accommodation for child support actually paid, removes the financial incentive to default. The majority's rule does not, at least directly. The majority notes that a parent defaulting on child support will eventually face a judgment or contempt citation from the district court. But that doesn't head off the financial harm inflicted on the children when a parent stops paying support.

As I have suggested, most disabled workers probably do not have the financial resources to pay their child support obligations. But

those who do shouldn't be penalized for paying. A parent's calculated decision to stop making child support payments despite the financial ability to do so would be both coldhearted and legally improper. Yet the arbitrariness of the majority rule and its apparent unfairness would seem to needlessly test a disabled parent's resolve to adhere to his or her child support obligations.

Likewise, the majority's observation that a noncustodial parent could file a motion for a reduction in child support shortly after becoming disabled or upon applying for Social Security benefits doesn't really solve the problem. Assuming the alternative source of income, here Papineau's disability insurance payments, were significantly less than the lost earnings, the parent could show a legal and practical change in circumstances supporting a reduction. But unless the resulting order reduced the child support to zero, the fundamental problem and the disincentive to pay would remain. The reduced child support, if paid, would still wind up duplicating a retroactive disability benefit to the children. So the disabled, noncustodial parent would receive no credit or accommodation for that amount. The financial inducement to default merely would be reduced, not eliminated.

Under the rule I suggest, a noncustodial parent able to continue paying child support despite a disability would have no incentive to stop during the pendency of his or application for Social Security disability benefits. Were that parent to stop paying anyway, the district court could take that contumaciousness into account in deciding whether to allow any credit toward the delinquent support based on the retroactive disability benefit for the children. A good equitable argument could be made for limiting or denying relief.

Finally, on this aspect of the issue, I suppose a district court weighing the appropriate remedy on a motion such as Papineau's could consider the effect a hypothetical request for a reduction in child support made when the noncustodial parent became disabled or applied for Social Security benefits would have had on that parent's child support obligation. That is, if the noncustodial parent had made such a request and it would have reduced the child support obligation, the district court could fairly consider limiting any relief by using that reduced figure. So in determining any credit

or accommodation due the noncustodial parent, the district court could rely on that lower child support obligation rather than the amount of child support the parent actually paid during time the Social Security disability benefits application was pending. The disabled noncustodial parent's failure to file a motion to reduce his or her monthly child support obligation would be akin to a failure mitigate to damages in that it would limit, but not preclude, relief.

There are a couple of related considerations that would come into play if I were writing for the court rather than dissenting. First, I don't believe that sort of reduction or mitigation of relief would run afoul of the provision in K.S.A. 2012 Supp. 23-3005(b) allowing an actual modification of child support no earlier than a month after the filing of the motion to modify. See *In re Marriage of Brown*, 295 Kan. 966, 973, 976-77, 291 P.3d 55 (2012) (noting time limit on effective date of motion to modify child support). Here, the district court would be gauging the effect of a motion that was never filed. The district court, however, would not actually be changing the amount of child support but merely determining whether the amount could have been changed and then measuring a remedy for a somewhat different problem based on that determination. Second, I suppose this sort of mitigation argument could be applied to disabled, noncustodial parents defaulting on their child support obligations as in *Hohmann* and *Taber*. The parties in those cases apparently didn't raise the effect of a hypothetical motion to modify child support on the amount of the delinquency to be offset against the lump-sum disability benefit, and this court didn't broach it. Both of these considerations would well benefit from the arguments of lawyers debating them in a live legal dispute, and I don't presume to venture some fully formed view on them outside that context.

## V.

The scant case authority from Mississippi and West Virginia the majority cites doesn't establish a compelling argument for denying Papineau relief. There is some authority from other jurisdictions, particularly North Dakota, favoring his position.

In *Keith v. Purvis*, 982 So. 2d 1033, 1039 (Miss. App. 2008), the court concluded a disabled, noncustodial parent should receive no accommodation for child support he paid during the time the Social Security Administration considered his application for disability benefits notwithstanding the retroactive lump-sum payment of benefits to his children. The court relied, in part, on an argument that the disability payments belonged to the children, rather than the noncustodial parent and, therefore, the children were not "unjustly" enriched by receiving both child support and retroactive disability benefits for the same time period. 982 So. 2d at 1038-39.

While the Social Security Administration makes the payments for the benefit of the children and typically delivers the money to the custodial parent for that purpose, the benefits derive directly from the noncustodial parent's disability and reflect a direct substitute for that parent's financial support. The children's protectable interest in those disability payments is not unfettered ownership so much as a beneficial one. Those funds could not be used to buy the child a Corvette or a top-of-the-line audio system, as much as he or she might really desire one. The money is intended to take care of immediate needs, not satisfy upscale wants. Those sorts of limitations are inconsistent with absolute ownership. See *LaMothe*, 193 Vt. 399 (characterizing disability benefit to child as "derivative" of disabled parent's employment and attributable to divorced parent in calculating support obligations). But ownership of the disability benefits is ultimately immaterial. As I have pointed out, an accommodation to Papineau would not require transferring the disability benefits to him or otherwise using them for an improper purpose.

The *Keith* majority twice suggests that allowing the noncustodial parent reimbursement from the retroactive lump-sum payment of disability benefits for child support actually paid during the pendency of the application with the Social Security Administration would *encourage* parents in that position to stop paying child support once they had filed for disability. 982 So. 2d at 1037, 1039. The court fails to explain how it comes to that conclusion. The argument seems topsy-turvy to me. The contrary rule this court adopts would more likely prompt nonpayment of child support.

In a decision decided several months after *Keith*, the Mississippi Court of Appeals held that a retroactive lump-sum disability payment should not be credited against the noncustodial parent's delinquent child support for the covered period. *Chapman v. Ward*, 3 So. 3d 790, 796 (Miss. App. 2008) (court enunciates this general rule and notes Chapman to be particularly undeserving of consideration because he could have paid child support from workers compensation benefits he had already received). The *Chapman* decision, of course, conflicts with *Hohmann* and *Taber*. But it is at least consistent with *Keith* in recognizing a draconian rule affording no relief to a disabled, noncustodial parent.[2]

[2]For what it is worth, two dissenting judges in *Keith* take a position roughly comparable to what I suggest. *Keith*, 982 So. 2d at 1041-42. (Irving and Chandler, JJ., concurring in part and dissenting in part).

The West Virginia Supreme Court has offered no better reasoning in *Steel v. Hartwick*, 209 W. Va. 706, 709-10, 551 S.E.2d 42 (2001), to deny any accommodation to disabled, noncustodial parents who manage to pay their child support while awaiting Social Security Administration action on their applications for disability benefits. In that case, Steel paid the child support from workers compensation benefits before being approved for Social Security disability, triggering a retroactive lump-sum payment to his children. The court suggested the children had done nothing inequitable, so a claim for unjust enrichment would not lie to recover the financial equivalent of child support payments. 209 W. Va. at 709. That may be true, but the reasoning ignores the overlapping purpose of child support and Social Security benefits for children of disabled workers. If the children's essential needs have been met through one or the other, it doesn't follow that they should receive or retain both.

The *Steel* decision largely relied on a legally dubious negative implication it drew from *Farley v. Farley*, 186 W. Va. 263, 412 S.E.2d 261 (1991). *Steel*, 209 W. Va. at 708-09. In *Farley*, the court held that generally a disabled noncustodial parent may offset the retroactive lump-sum payment of disability benefits to his or her child against delinquent child support. 186 W. Va. at 266-67. The

court, however, had no reason to discuss—and did not purport to address—how a retroactive lump-sum payment should be treated when the parent actually has paid child support during the period the lump sum covers. Those were not the material facts in *Farley*, and the court did not so much as venture any dicta. 186 W. Va. at 265 (Although Farley sporadically paid child support after he became disabled, the only question the court considered was whether the retroactive lump-sum Social Security disability benefit should be credited against his child support arrearage.). But the *Steel* court converted the judicially restrained silence of *Farley* into a ringing rejection of relief for disabled, noncustodial parents in circumstances *Farley* never presumed to address. *Steel*, 209 W. Va. at 708-09. In other words, the *Steel* court construed *Farley's* failure to consider a set of facts similar to the ones on which it *granted* relief as the legal equivalent of a holding *rejecting* relief on that set of facts. The *Steel* approach does a serious disservice to the basic principles of judicial reasoning and highlights the danger in applying precedent to variant factual circumstances without a studied explanation. See *Brown v. Ryan*, No. 104,088, 2011 WL 6309451, at *7-8 (Kan. App. 2011) (unpublished opinion) (Atcheson, J., concurring).

In turn, *Steel's* reasoning that "the children in the present case had a legal right . . . to both the child support and the social security benefits" cannot be reconciled with the holding in *Farley*, since the children there had no different legal rights yet were not entitled to both the retroactive lump-sum disability benefit and the payment of delinquent child support for that period. *Steel*, 209 W. Va. at 709. In short, *Steel* misapplied *Farley* and stumbled into the same inconsistency the majority relies on here.

Finally, *Steel* cites the federal statute preventing alienation of Social Security benefits and prohibiting attachment of any money received as benefits, 42 U.S.C. § 407(a) (2006), as supporting its conclusion. The provision aims " 'to protect social security beneficiaries from creditors' claims.' " *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1093-94 (9th Cir. 2012) (quoting *Dionne v. Bouley*, 757 F.2d 1344, 1355 [1st Cir. 1985]). But the statutory protection would seem inapposite in that case

and here. Papineau is not a creditor looking to seize the disability benefits to satisfy some existing debt for goods and services, thereby depriving the children of essential financial resources. Rather, he wants a fair accommodation taking account of the duplicative nature of the child support he has paid and the lump-sum disability benefits the children have received. What he requests will not thwart the purposes of either child support or Social Security disability benefits.

The *Hohmann* decision cites *Keith, Steel,* and several other cases for the proposition that a disabled parent who has paid child support awaiting a determination on Social Security disability benefits ought not get an accommodation based on a retroactive lump-sum disability payment to his or her children. 47 Kan. App. 2d at 121. But the remaining authority does not directly address the issue. See *State v. Hawkins,* 285 Kan. 842, 851-53, 176 P.3d 174 (2008); *Child Support Enforcement Agency v. Doe,* 92 Hawaii 276, 285-86, 990 P.2d 1158 (Hawaii App. 1999) (court acknowledges rulings generally treating disability payments exceeding child support obligations to be "a gratuity" and declining to apply those excess payments to delinquent support obligations accruing before the disability); *Brown v. Brown,* 849 N.E.2d 610, 616 (Ind. 2006) (court does not discuss treatment of retroactive disability payment when disabled, noncustodial parent has paid child support while Social Security Administration considers application for benefits); *Holmberg v. Holmberg,* 578 N.W.2d 817, 826-27 (Minn. App. 1998) (court permits retroactive disability benefits to be credited against child support arrearage but does not address treatment when child support actually has been paid for that period), *aff'd on other grounds* 588 N.W.2d 720 (Minn. 1999). The Iowa Supreme Court's decision in *Newman v. Newman,* 451 N.W.2d 843, 845 (Iowa 1990), isn't directly on point either. In that case, the court declined to consider relief for a noncustodial parent who sued the custodial parent for unjust enrichment in an independent civil action to recover child support he paid for a period covered by a retroactive payment of Social Security disability benefits. The court held the noncustodial parent's failure to file a motion to modify child support in the divorce proceeding created an insuperable bar to a

claim for unjust enrichment. But the decision offered no clear statement about how such a motion would fare under Iowa law.

Nobody has happened on a trove of directly on-point cases supporting Papineau either. Recently, however, the North Dakota Supreme Court ruled that a disabled, noncustodial parent should be reimbursed for child support payments he made during the pendency of his application for Social Security disability after the benefits were approved and the children received a retroactive lump-sum benefit for that time. *Davis v. Davis*, 780 N.W.2d 707, 711-12 (N.D. 2010). The court's approach is instructive.

The court relied on a North Dakota administrative regulation governing child support that, in relevant part, stated:

"'A payment of children's benefits made to or on behalf of a child who is not living with the obligor must be credited as a payment toward the obligor's child support obligation in the month (or other period) the payment is intended to cover, but may not be credited as a payment toward the child support obligation for any other month or period.' [N.D. Admin. Code § 75-02-04.1-02(11) (1995)]." 780 N.W.2d at 709.

The administrative code section bears a striking resemblance to the holding in *Andler v. Andler*, 217 Kan. 538, Syl. ¶ 4, 538 P.2d 649 (1975). The similarity is not coincidental. The code provision, according to its drafters, reinforces the holding in *Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D. 1989). *Davis*, 780 N.W.2d at 709. In *Guthmiller*, the North Dakota Supreme Court held that monthly Social Security disability benefits to minor children should be credited against the disabled, noncustodial parent's monthly child support obligation and cited *Andler*, among other cases, as persuasive authority. *Guthmiller*, 448 N.W.2d at 647-49. Thus, the North Dakota provision essentially codifies the common-law rule of *Andler*.

In *Tibor v. Bendrick*, 593 N.W.2d 395, 397-98 (N.D. 1999), the North Dakota Supreme Court construed the code section to permit a disabled, noncustodial parent to offset the retroactive lump-sum disability benefit to his children against his delinquent child support for the covered time period—effectively taking the same position this court later would in *Hohmann*. In turn, the *Davis* court, with one dissenter, recognized that allowing reimbursement of

child support actually paid during the period covered by a retroactive lump-sum disability benefit reflects the legally proper reading of the administrative code and the logical extension of the earlier North Dakota caselaw. 780 N.W.2d at 711-12. The decision, then, parallels the progression I suggest the law in Kansas necessarily ought to take from *Andler* to *Hohmann* to this case. Both progressions originate with the rule recognized in *Andler*.

In analogous circumstances, the Vermont Supreme Court recently upheld the reallocation of the retroactive lump-sum disability benefit to a dependent child to avoid disadvantaging a disabled, noncustodial parent who owed no child support. *LaMothe*, 2013 WL 1010536, at *10. The court directed that the noncustodial parent be relieved of his share of the substantial cost of uninsured dental work for the child because the custodial parent would otherwise realize "a windfall" from the disability benefit. The court characterized the disability benefit to the child as a "derivative" one that should be attributed to the disabled parent in assessing financial obligations under the divorce decree and redirected the benefit to satisfy one of those obligations. 2013 WL 1010536, at *10.

Similarly, in a brief decision, the Tennessee Court of Appeals affirmed a ruling that the custodial parent hold in trust a retroactive lump-sum disability benefit to a minor to be credited against any *future* child support obligations of the disabled, noncustodial parent. *Orr v. Orr*, 871 S.W.2d 695, 696 (Tenn. App. 1993). At the time, the noncustodial parent owed no delinquent child support, and the monthly disability benefits covered his ongoing child support. The court noted that the noncustodial parent had not asked for reimbursement but only for a credit toward future child support should he be able to return to work, resulting in the termination of monthly disability benefits for the child. The court recognized that the lump-sum benefit combined with the child support effectively resulted in double payments for the covered period. The *Orr* decision offered no guidance as to what would be done with the money if the noncustodial parent could not return to work before the child reached the age of majority. But the *Orr* court endorsed an accommodation for the noncustodial parent based on the du-

plicative payments, while this court would permit none to Papineau.

The persuasive authority from other jurisdictions might best be characterized as limited and split. Each side may find support in that authority, and neither side can point to a position that commands attention by sheer breadth of acceptance. But the North Dakota Supreme Court's resolution builds on the same rules and reasoning as *Andler* and *Hohmann* and reaches a conclusion that legally and logically fits with that foundation. The *Davis* decision, therefore, runs ahead in a decidedly short field.

In sum, then, consistent with the treatment afforded disabled, noncustodial parents in *Andler*, *Hohmann*, and *Taber*, Papineau should be allowed an accommodation for the child support he paid during the time the Social Security Administration considered his application for disability benefits. The value of the accommodation could not exceed the child support for that period given the parties' stipulation that the child support Papineau paid was less than the retroactive lump-sum Social Security disability benefit for the children. The relief could be a payment or payments from Stephenson to Papineau, a credit against other obligations Papineau has under the divorce decree benefiting his sons, a combination of payments and credits, or something else satisfactory to the parties and the district court. I would remand to the district court to fashion the particular accommodation.